825 A.2d 354

STATE of Maryland COMMISSION ON HUMAN RELATIONS

v.

FREEDOM EXPRESS/DOMEGOLD, INC.

No. 33, Sept. Term, 2001.

Court of Appeals of Maryland.

June 6, 2003.

Patricia A. Wood, Asst. Gen. Counsel (Glendora C. Hughes, Gen. Counsel, and Elizabeth Colette, Tracy E. Ashby, Asst. Gen. Counsel, on brief), Baltimore, for Appellant.

Jack L.B. Gohn (Gohn, Hankey & Stichel, L.L.P., on brief), Baltimore; Nathan J. Greenbaum (Linowes & Blocher, L.L.P., on brief), Silver Spring as amici.

Argued before BELL, C.J. ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

ELDRIDGE, Judge.

The issue in this case concerns the scope of a trial court's authority in an action by the Maryland Commission on Human Relations to enforce an administrative subpoena pursuant to Maryland Code (1957, 1998 Repl.Vol.), Art. 49B, § 11(d).

## I.

Prior to May 27, 1997, Mrs. Marvinette Karasek was employed by the defendant-appellee, Freedom Express/Domegold, Inc., the operator of a pharmacy, as a "pharmacist technician." On June 6, 1997, Mrs. Karasek filed with the Commission on Human Relations a complaint against the defendant, asserting discrimination because of her gender and because of pregnancy, in violation of Art. 49B, § 16.[1] Mrs. Karasek's complaint alleged that prior to May 27, 1997, she had never had any complaints about her work performance, that on May 19, 1997, she informed Harvey Goldberg, the owner of the defendant corporation, that she was pregnant, and that on May 27, 1997, Mr. Goldberg informed her that she "was being terminated because [her] work was not up to par." The complaint further alleged that another female pharmacist technician, who was having work problems but who was not pregnant, was "sent . . . to another pharmacy to be retrained, according to company policy." The complaint also stated that Mr. Goldberg "told a co-worker that 'pregnant women are walking law suits.'" Finally, the complaint alleged that the defendant had between 15 and 100 employees.

Sometime later in 1997, Mrs. Karasek filed with the Human Relations Commission a second complaint alleging further unlawful discrimination in the form of retaliation for filing the first complaint. The second complaint alleged that, upon being terminated in May 1997, Mrs. Karasek filed for and

---

1. Code (1957, 1998 Repl.Vol., 2002 Supp.), Art. 49B, § 16(a)(1), provides as follows:

   "§ 16.  Unlawful employment practices.

   "(a) *Failure to hire or discharge; reduced status.*—It shall be an unlawful employment practice for an employer:

   (1) To fail or refuse to hire or discharge any individual, or otherwise to discriminate against any individual with respect to the individual's compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, age, national origin, marital status, sexual orientation, genetic information, or disability unrelated in nature and extent so as to reasonably preclude the performance of the employment, or because of the individual's refusal to submit to a genetic test or make available the results of a genetic test. . . ."

began receiving unemployment benefits, that "[o]n 6/28/97, I received a letter from the Unemployment Office stating that my employer Freedom Express/Domegold had filed an objection to my unemployment benefits," and that "I believe that my employer's objection was in retaliation for filing the original charge of discrimination."

In accordance with Art. 49B, § 10, the Executive Director of the Commission referred the complaints to the Commission's staff for investigation.[2] In attempting to investigate and obtain information from the defendant, the Commission's staff was consistently met with a refusal based on the defendant's assertion that the Commission had "no jurisdiction" over the defendant. The "no jurisdiction" assertion was based upon the defendant's allegation that it had less than fifteen employees and that, therefore, it was not an "employer" within the meaning of the "Discrimination In Employment" subtitle of Art. 49B, §§ 14–18.[3] In response, the Commission asked for

---

**2.** Art. 49B, § 10, provides in part as follows:

"**§ 10. Investigation; findings; agreement for elimination of discrimination; appeals.**

"(a) After the filing of any complaint the Executive Director shall consider the complaint and shall refer it to the Commission's staff for prompt investigation and ascertainment of the facts. The results of the investigation shall be made as written findings. A copy of the findings shall be furnished to the complainant and to the person, firm, association, partnership or corporation (hereinafter referred to as the 'respondent'), against whom or which the complaint is made.

"(b) If the finding is that there is probable cause for believing a discriminatory act has been or is being committed within the scope of any of these subtitles, the Commission's staff immediately shall endeavor to eliminate the discrimination by conference, conciliation. . . .

"(c) If an agreement is reached for the elimination of the discrimination as a result of the conference, conciliation and persuasion the agreement shall be reduced to writing and signed by the respondent, and an order shall be entered by the Commission setting forth the terms of the agreement. The Commission shall not enter an order at this stage of the proceedings unless it is based upon a written agreement. If no such agreement can be reached, a finding to that effect shall be made and reduced to writing with copies furnished to the complainant and to the respondent."

\* \* \*

**3.** Art. 49B, § 15(a) and (b), state as follows:

documentation concerning the allegation of having fewer than fifteen employees, as well as information relating to Mrs. Karasek's complaints. In one 1999 letter, the Commission stated:

"It is fully understood that Respondent operates more than one pharmacy, with each being a separate corporation and operating as such. This does not negate the fact that personnel is not being shared among each pharmacy. Thus, ownership is not irrelevant.

"Every effort should be made on Respondent's part to provide this information within five (5) days from the date of this letter. Failure to do so will result in the issuance of a subpoena."

Having received no further information from the defendant, the Commission on December 22, 1999, issued a subpoena *duces tecum* to the defendant, seeking documents concerning the defendant's corporate structure, the employer's quarterly federal tax returns for businesses owned or operated by Harvey Goldberg, and documents relating to the discharge of Mrs. Karasek.[4] The defendant did not furnish the documents

---

"(a) *Person.*—The term 'person' includes one or more individuals, labor unions, partnerships, associations, corporations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in bankruptcy, or receivers.

"(b) *Employer.*—The term 'employer' means a person engaged in any industry or business who has fifteen or more employees for each working day in each twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person; such term does include the State of Maryland to the extent as may be provided in this article but such term does not include a bona fide private membership club (other than a labor organization) which is exempt from taxation under § 501(c) of the Internal Revenue Code."

4. Specifically, the subpoena sought the following documents:

"1. Provide Form 941 (Employer's Quarterly Federal Tax Return) for the years 1996, 1997, and 1998 for any business owned and/or operated by Harvey Goldberg including but not limited to Freedom Drug or Freedom Pharmacy, 7568 North Point Road, Baltimore, MD; Freedom Drug, 2100 Orem Road, Baltimore, MD; Freedom Drug, 3903 Hollins Ferry Road, Baltimore, MD; and Freedom Drug, 601 North Caroline Street, Baltimore, MD.

sought by the subpoena, and on February 28, 2000, the Commission's Assistant General Counsel wrote to the defendant's attorney, stating, *inter alia*, as follows:

"As you have been advised, operations between separate and distinct legal entities may be integrated as to constitute a single employer for purposes of ... Article 49B. Four factors generally are considered: (1) interrelation of operations; (2) centralized control of labor relations and personnel; (3) common management; and (4) common ownership and financial control.

2. Provide documents which describe your corporation structure, indicating, if any, the relationship between it and all superior and subordinate establishments within the organization.

3. Provide documents which describe the legal status of your organization, i.e., corporation, partnership, tax-exempt non-profit, etc. If incorporated, identify the state of incorporation.

4. Provide documents which state whether your organization has a contract with any agency of the federal government or is a subcontractor on a project which received federal funding.

5. Provide all written rules, policies and procedures relating to the issue(s) raised in the charges.

6. Provide documents which describe your discharge procedures in effect at the time of the alleged violation.

7. Provide all written rules relating to employee duties and conduct. Explain how this information is disseminated to employees.

8. Provide any and all written documents which identify all employees from November 1996 to November 1997, who committed the same or substantially similar offense(s) that the charging party committed and the disciplinary action taken against them, by name, position title, and gender.

9. Provide any and all written documents which identify the person recommending complainant's discharge, by name, position title, and gender.

10. Provide complete personnel files for all individuals employed as pharmacist technicians at any and all locations identified in Request # 1 from November 1996 to November 1997.

11. Provide any and all documents which identify all involuntary discharges within the relevant period November 1996 to November 1997, by employee's name, gender, position title, reason for and date of discharge.

12. Provide any and all documents which identify all employees who have been granted leave due to pregnancy during the time period from November 1996 to November 1997.

13. Provide any and all documents which describe your policies and procedures in regard to leave due to pregnancy.

"The only information you have provided to support your allegation of lack of jurisdiction is the number of employees for one entity owned or operated by Harvey Goldberg. Information must also be provided regarding Mr. Goldberg's other businesses, including all Freedom Express, Freedom Pharmacy and Freedom Drug stores. Relevant and necessary information includes, but is not limited to: (1) Articles of Incorporation, (2) source of payroll checks, workers' compensation, unemployment and other benefits, (3) hiring practices, (4) personnel forms and procedures, and (5) the legal counsel, for each entity owned or operated by Mr. Goldberg.

"Despite repeated requests, you have failed to provide this relevant and necessary information. Unfortunately, your client has failed even to respond to the Commission's subpoena seeking relevant and necessary information. In addition to the assertion of lack of jurisdiction, you indicate that your client's position is that the Commission is not entitled to all of the information sought by the subpoena. However, you do not specify what information your client believes the Commission is not entitled to or why your client believes the Commission is not entitled to it. Accordingly, on March 6, 2000, the Commission will file an action for the issuance of a court order compelling compliance, unless the subpoenaed documents are delivered prior to that date."

The defendant then turned over to the Commission articles of incorporation and redacted employer's quarterly federal tax returns "For Harvey Goldberg's Corporations: Domegold, Aerogold, Norgold and Bergold." None of the other requested documents were submitted to the Commission.

Next, the Commission informed the defendant that the documents submitted indicated that the four corporations were "integrated entities so as to constitute a single employer for purposes of ... Article 49B." The Commission pointed to documents showing that Mr. Goldberg was the president of

---

14. Provide any and all documents which describe your policies and procedures in regard to unemployment benefits."

each corporation, that they all had the same principal place of business, and that the wages and benefits were the same with respect to each corporation. The Commission requested that the defendant comply with the other parts of the subpoena "in order that the Commission's investigation of this matter can be completed." The defendant replied by refusing to supply additional documents and asserting: "there is no jurisdiction over Domegold and the subpoenaed items going to the issue of jurisdiction have been provided...."

Pursuant to Art. 49B, § 11(d)(3), the Commission filed, in the Circuit Court for Baltimore City, the present action to enforce the administrative subpoena.[5] The Commission's "Pe-

---

5. Art. 49B, § 11(d), provides as follows:

"(d) *Power of Commission to administer oaths, etc.; subpoenas.*— (1) In the administration and enforcement of the provisions of these several subtitles, the Commission has power to:

(i) Administer oaths and to issue subpoenas;

(ii) Compel the attendance and testimony of witnesses; and

(iii) Compel the production of books, papers, records and documents relevant or necessary for proceedings under the particular subtitle.

(2) Any subpoena shall be served by:

(i) Certified mail, requesting restricted delivery—Show to whom, date, address of delivery; or

(ii) Personal service of process by:

1. An employee of the Commission;

2. Any person who is not a party and is not less than 18 years of age; or

3. The sheriff or deputy sheriff of the political subdivision in which is located the residence of the person or the main office of the firm, association, partnership or corporation against whom or which the subpoena is issued.

(3)(i) In case of disobedience to a subpoena, the Commission may apply to a circuit court in any county for an order requiring the attendance and testimony of witnesses and the production of books, papers, records, and documents.

(ii) In case of contumacy or refusal to obey a subpoena for the attendance of a witness or the production of books, papers, records, and documents, after notice to the person subpoenaed as a witness or directed to produce books, papers, records and documents, and upon a finding that the attendance and testimony of the witness or the production of the books, papers, records and documents is relevant or necessary for the proceedings of the Commission, the court may issue an order requiring the attendance and testimony of the witness and the production of the books, papers, records and documents.

tition for Enforcement" stated that the "subpoena is to obtain information necessary and relevant to the Commission's investigation as required pursuant to Article 49B, § 10," and that the defendant Freedom Express/Domegold, Inc. "has refused to produce the requested documents." The Commission's petition went on to set forth in detail the factual allegations of Mrs. Karasek's complaints, the history of the case, and the correspondence between the Commission and the defendant.

The defendant's answer in the Circuit Court repeatedly stated, *inter alia*, that the Commission "has received the subpoenaed information which establishes that the Petitioner does not have jurisdiction, as Domegold, Inc. did not have 'fifteen or more employees....'" The defendant requested that the court dismiss the petition for "lack of jurisdiction over the subject matter...."

Following a hearing, the Circuit Court issued an order which neither enforced the subpoena, nor denied enforcement, nor dismissed for lack of jurisdiction. Instead, the court

"**ORDERED** that the case be remanded to the Maryland Commission on Human Relations for the purpose of conducting an evidentiary hearing to determine whether a sufficient basis existed at the time the subject complaints were filed to treat the then extant corporate entities owned and controlled by Harvey Goldberg as a 'single employer' for purposes of establishing jurisdiction by the Commission. The exhibits which were entered into the record before this Court by stipulation are insufficient to determine more than the common ownership and financial control of the various corporate entities by Mr. Goldberg. The other factors which courts have deemed relevant to this inquiry cannot be determined on the basis of the record before the Court and the Court's suspicion that the operations of these entities

---

(iii) Any failure to obey such an order of the court may be punished by the court as a contempt thereof.

(iv) An order issued by the court under this subsection shall be served on the person to whom it is directed by the sheriff or deputy sheriff of the political subdivision where the residence or main office of the person is located."

were sufficiently integrated is an insufficient predicate upon which to establish the Commission's jurisdiction at this juncture. Accordingly, the case must be remanded to the Commission for an evidentiary hearing...."

On the day after the Circuit Court's order, the Commission filed a motion for reconsideration, arguing, among other things, "that there is no authority under Article 49B for the Court to order the Commission to conduct an evidentiary hearing" at this stage of the case and that there had been no exhaustion of administrative remedies. In response, the defendant urged the Circuit Court to deny the motion for reconsideration and dismiss the petition for enforcement, arguing that *Equitable Trust Co. v. State Commission on Human Relations,* 287 Md. 80, 411 A.2d 86 (1980), was "clearly the applicable case" and warranted a dismissal of the Commission's petition for enforcement of the administrative subpoena. The Circuit Court entered an order simply denying the Commission's motion for reconsideration.

The Commission appealed to the Court of Special Appeals. Prior to any proceedings in that intermediate appellate court, this Court issued a writ of certiorari. *Commission on Human Relations v. Freedom Express,* 364 Md. 461, 773 A.2d 513 (2001).[6]

## II.

### A.

■ Art. 49B, § 11(d), authorizes the Commission, "[i]n the administration and enforcement of the ... subtitles" of Art. 49B, "to issue subpoenas" and "(iii) [c]ompel the production of books, papers, records and documents *relevant or necessary*

---

6. The defendant-appellee did not file a brief in this Court. In order to have all sides of the case presented, we invited Nathan J. Greenbaum, Esquire, of Linowes & Blocher LLP, and Jack L.B. Gohn, Esquire, of Gohn, Hankey & Stichel, LLP, to file a brief as *amici curiae* and to participate in the oral argument. The Court very much appreciates the excellent assistance which Messrs. Greenbaum and Gohn have provided to the Court.

for proceedings under the particular subtitle." (Emphasis added). The Commission's investigation of an employment discrimination complaint is a proceeding under Art. 49B and, therefore, is a proceeding for which the Commission is empowered to compel the production of books, papers, records and documents. *See, e.g., Banach v. State Commission on Human Relations,* 277 Md. 502, 356 A.2d 242 (1976).

The only prerequisites expressly set forth in Art. 49B, § 11, for the issuance and judicial enforcement of a Commission subpoena are certain formal requirements, proper service of process, and a finding that "the production of the books, papers, records and documents is relevant or necessary for the proceedings" (§§ 11(d)(1)(iii), 11(d)(3)(ii)). The requirement of "relevance" in § 11(d) is the same as the requirements of "relevance" or "reasonableness" which are generally applied by the courts in determining whether to enforce administrative subpoenas. *Banach v. State Commission on Human Relations, supra,* 277 Md. at 506–507, 356 A.2d at 245–246. *See, e.g., United States v. Morton Salt Co.,* 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950); *Oklahoma Press Publishing Co. v. Walling,* 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946); *Equitable Trust Co. v. State Commission on Human Relations, supra,* 287 Md. at 91–94, 411 A.2d at 92–94; *Vulcan Waterproofers', Inc. v. Maryland Home Improvement Commission,* 253 Md. 204, 210, 252 A.2d 62, 65 (1969).

In the case at bar, there has never been a contention that the above-mentioned § 11(d) prerequisites for the issuance and enforcement of a Commission's subpoena were not present. On the contrary, during the hearing before the Circuit Court, the defendant's counsel agreed that, if there was a judicial finding that the Commission had "jurisdiction" in light of the statutory definition of employer, the defendant would "not contest" that "the subpoena should be enforced, [and] that those [documents] are relevant." The defendant's counsel stated that, upon a finding of jurisdiction, "then their investigation would go forward as to the underlying claim.

And yes, if there was that finding, then yes, we do not dispute that we would have to give them that information."

██ Moreover, even if a final resolution of the "employer" issue were a prerequisite for the issuance and/or enforcement of the subpoena (and it clearly is not such a prerequisite), nothing in Art. 49B or in the Maryland Administrative Procedure Act, Code (1984, 1999 Repl.Vol.), § 10–222 of the State Government Article, would authorize the Circuit Court, while the case is pending before the agency at the investigatory stage, to remand the case and order the agency to conduct a hearing. As later discussed, a court's authority to remand a case to the Human Relations Commission for further proceedings is ordinarily limited to actions for judicial review of *final* administrative decisions. *See* §§ 10–222(a) and (h)(1) of the State Government Article. In an action under Art. 49B, § 11(d), the court's authority is to either enforce the subpoena, or modify the subpoena and, as so modified, enforce it, or to dismiss the Commission's petition for enforcement. *See Equitable Trust Co. v. State Commission on Human Relations, supra,* 287 Md. at 100, 411 A.2d at 97; *Banach v. State Commission on Human Relations, supra,* 277 Md. at 517, 356 A.2d at 251.

### B.

██ Whether the defendant was an "employer" within the meaning of Art. 49B, § 15(b), rather than an issue to be resolved in a subpoena enforcement action, is a typical statutory interpretation or application issue to be determined by a final administrative decision and to be judicially reviewed in an action under the Administrative Procedure Act, § 10–222 of the State Government Article.[7] Depending upon the adminis-

---

7. Section 10–222 provides in pertinent part as follows:
   "**§ 10–222. Judicial review.**
   "(a) *Review of final decision.*—(1) Except as provided in subsection (b) of this section, a party who is aggrieved by the final decision in a contested case is entitled to judicial review of the decision as provided in this section.

trative record, and particularly the transcript of the hearing under Art. 49B, §§ 11(a), 11(b), and 11(c), the issue may turn out to be one of fact, or one of law, or a mixed factual and legal issue.[8]

---

(2) An agency including an agency that has delegated a contested case to the Office, is entitled to judicial review of a decision as provided in this section if the agency was a party before the agency or the Office.

(b) *Review of interlocutory order.*—Where the presiding officer has final decision-making authority, a person in a contested case who is aggrieved by an interlocutory order is entitled to judicial review if:

(1) the party would qualify under this section for judicial review of any related final decision;

(2) the interlocutory order:

(i) determines rights and liabilities; and

(ii) has immediate legal consequences; and

(3) postponement of judicial review would result in irreparable harm.

\* \* \*

"(h) *Decision.*—In a proceeding under this section, the court may:

(1) remand the case for further proceedings;

(2) affirm the final decision; or

(3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision:

(i) is unconstitutional;

(ii) exceeds the statutory authority or jurisdiction of the final decision maker;

(iii) results from an unlawful procedure;

(iv) is affected by any other error of law;

(v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or

(vi) is arbitrary or capricious."

8. Art. 49B, §§ 11(a), 11(b), and 11(c), read as follows:

"§ 11. **Hearing.**

"(a) *Certification of file; notice to respondent; place of hearing; transcript; duty of Commission's counsel.*—In case of failure to reach an agreement for the elimination of the acts of discrimination and upon the entry of findings to that effect, the entire file including the complaint and any and all findings made shall be certified to. The Chairman shall cause a written notice to be issued and served in the name of the Commission together with a copy of the complaint requiring the respondent to answer the charges of the complaint at a public hearing before a hearing examiner at a time and place certified in the notice.

"The case shall thereupon be heard by a hearing examiner and the hearing shall be held in the county where the alleged act of discrimination took place. A transcript of all testimony at the hearing shall

The disputed "employer" issue in the present case is also not a "jurisdictional" question. Instead, it is similar to many other issues which, under this Court's opinions, ordinarily cannot be judicially reviewed until there is a final administrative decision.

For example, *Board of License Commissioners v. Corridor*, 361 Md. 403, 761 A.2d 916 (2000), involved an administrative proceeding against the holder of an alcoholic beverage license, based on the sale of alcoholic beverages to a minor, by an employee of the licensee. A statute provided that, if a court found the employee not guilty of the offense or placed the employee "on probation without a verdict," the "finding operates as a complete bar to any proceeding by any alcoholic beverage law enforcement or licensing authorities against the licensee on account of the alleged violation." Immediately prior to the administrative hearing, the Maryland District Court disposed of the criminal charge against the licensee's employee by entering "a verdict of 'Probation Before Judgment.'" *Corridor*, 361 Md. at 407, 761 A.2d at 917. The licensee then argued, at the administrative hearing, that this District Court verdict was a statutory bar to the administrative proceedings and that the proceedings should be dismissed. The agency rejected the argument and scheduled a resumption of the hearing to deal with the merits. Before the administrative hearing could resume, the licensee filed a Circuit Court action, seeking an order requiring the agency to dismiss the administrative proceedings. Like the defendant in the case at bar, the licensee asserted that, under the statute, the District Court

---

be made. The case in support of the complaint shall be presented at the hearing by the general counsel of the Commission.

"(b) *Answer and appearance of respondent; right to submit testimony and examine witnesses.*—The respondent may file a written answer to the complaint and appear at the hearing in person, or otherwise, with or without counsel. The respondent may submit testimony and shall be fully heard. He may examine and cross-examine witnesses.

"(c) *Amendment of complaint or answer; testimony to be under oath and recorded.*—The Commission may permit reasonable amendment to be made to any complaint or answer. Testimony taken at the hearing shall be under oath and recorded."

verdict "deprived the Board of jurisdiction." 361 Md. at 409, 761 A.2d at 919. The Circuit Court agreed, held "that the Board 'lacks jurisdiction to proceed in the pending administrative matter,'" and ordered the administrative agency to dismiss the proceedings. *Ibid.*

This Court in *Corridor,* 361 Md. at 417–418, 761 A.2d at 923–924, reversed the Circuit Court's decision, held that "the statutory interpretation issue underlying this case does not relate to the subject matter jurisdiction of the Board," and held that judicial review of the issue "'will lie only if the administrative order is final,'" quoting *Driggs Corp. v. Md. Aviation,* 348 Md. 389, 407, 704 A.2d 433, 442 (1998), and *Holiday Spas v. Montgomery County,* 315 Md. 390, 395, 554 A.2d 1197, 1199 (1989). In holding that the type of issue raised in *Corridor* was not jurisdictional, we explained (*Corridor,* 361 Md. at 417–418, 761 A.2d at 923–924):

> "Judge J. Dudley Digges for this Court, in *First Federated Commodity Trust Corp. v. Commissioner,* 272 Md. 329, 335, 322 A.2d 539, 543 (1974), set forth the general test for determining the subject matter jurisdiction of a tribunal:
>
> > 'If by that law which defines the authority of the court, a judicial body is given the *power* to render a judgment over that class of cases within which a particular one falls, then its action cannot be assailed for want of subject matter jurisdiction.'
>
> "*See also Board of Nursing v. Nechay,* 347 Md. 396, 405–407, 701 A.2d 405, 410–411 (1997). Art. 2B of the Maryland Code clearly gives the Board the power to render a decision over the class of cases within which the present case falls.
>
> "Simply because a statutory provision directs a court or an adjudicatory agency to decide a case in a particular way, if certain circumstances are shown, does not create an issue going to the court's or agency's subject matter jurisdiction. There have been numerous cases in this Court involving the situation where a trial court or an adjudicatory agency has jurisdiction over the subject matter, but where a statute directs the court or agency, under certain circumstances, to

exercise its jurisdiction in a particular way, or to rule in favor of a respondent, or to dismiss the case, and the tribunal erroneously refuses to do so because of an error of statutory interpretation or an error of fact. In these situations, this Court has regularly held that the matter did not concern the subject matter jurisdiction of the trial court or the agency. *See, e.g., Montgomery County v. Ward,* 331 Md. 521, 527–528, 629 A.2d 619, 622 (1993); *Md. Comm'n On Human Relations v. Beth. Steel, supra,* 295 Md. [586] at 594–595, 457 A.2d [1146] at 1150–1151; *Comm'n On Human Relations v. Mass Transit,* 294 Md. 225, 233–235, 449 A.2d 385, 389–390 (1982); *Parks v. State,* 287 Md. 11, 16–17, 410 A.2d 597, 601 (1980); *Block v. State,* 286 Md. 266, 268–271, 407 A.2d 320, 321–323 (1979)."

More recently, Judge Wilner for the Court in *Carey v. Chessie Computer,* 369 Md. 741, 755–756, 802 A.2d 1060, 1068–1069 (2002), underscored the narrowness of the "lack of jurisdiction" concept:

"In earlier days, courts seemed more willing to view limitations on their authority or discretion as jurisdictional in nature. We have moved away from that view in the past few decades, however, in part because of the consequences of such an approach.

\* \* \*

"That characteristic [*i.e.,* that rulings are void if the tribunal lacked jurisdiction]—the utter nullity of rulings that the court had no jurisdiction to make—necessarily follows from the very concept of the rule of law, the protection of which is a court's predominant, if not only, function. The Judiciary can no more bind persons to orders it has no power to make than can any other institution or branch of government. If Order is not to descend into Chaos, however, that characteristic needs some circumscription, which, through revisiting the notion of jurisdiction, we have given it. Though recognizing the broad and varied meanings that have been given to the term 'jurisdiction' in various contexts, we have in recent times determined that, when considered in terms of whether challenged rulings are

truly and intrinsically void or merely erroneous and therefore voidable, the term must be taken in a more limited sense, to mean 'fundamental jurisdiction'—the 'power to act with regard to a subject matter which "is conferred by the sovereign authority which organizes the court, and is to be sought for in the general nature of its powers, or in authority specially conferred.' " *Pulley v. State,* 287 Md. 406, 416, 412 A.2d 1244, 1249 (1980) (quoting from *Cooper v. Reynolds' Lessee,* 10 Wall. 308, 77 U.S. 308, 316, 19 L.Ed. 931, 932 (1870))."

The above-quoted language is equally applicable to rulings by adjudicatory administrative tribunals.

A case that is very analogous to the instant one is *Commission on Human Relations v. Mass Transit,* 294 Md. 225, 449 A.2d 385 (1982). *Mass Transit* was also an employment discrimination case and, as in the present case, the employer raised a statutory coverage issue. The statutory provisions gave the Commission authority over employment discrimination because of an individual's "physical or mental handicap." The employer rejected the complainants' employment applications on the ground that they were "overweight." Before a scheduled administrative hearing on the complaints occurred, the employer filed a Circuit Court action to enjoin the administrative proceedings. The employer contended " 'that overweight or obesity is not a physical handicap within the meaning of the definition found in Article 49B' and 'that the Commission has neither the power, authority nor jurisdiction to consider obesity as a physical handicap' " within the meaning of the statute. *Mass Transit,* 294 Md. at 228, 449 A.2d at 386. The Circuit Court held that the Commission was "without jurisdiction" and enjoined further administrative proceedings. This Court, however, reversed, stating (294 Md. at 233, 449 A.2d at 389):

"The [employer] in the present case has couched the statutory interpretation issue in terms of the Commission's 'authority' or 'power' or 'jurisdiction,' and has charged that the Commission is attempting to 'expand' its jurisdiction and proceed in an unauthorized manner. Nevertheless,

many, if not most, statutory interpretation issues arising in administrative proceedings could be phrased in terms of the agency's 'authority,' 'power' or 'jurisdiction' to take a certain type of action in a specific case. A party's argument that an agency will be exceeding its authority if it ultimately interprets the statute and decides the case contrary to that party's position, does not excuse the failure to await a final agency decision."

*See also, e.g., State Retirement v. Thompson,* 368 Md. 53, 65–66, 792 A.2d 277, 284–285 (2002); *SEFAC v. MTA,* 367 Md. 374, 380–383, 788 A.2d 192, 196–197 (2002); *State v. State Board of Contract Appeals,* 364 Md. 446, 456–458, 773 A.2d 504, 510–511 (2001); *Commission on Human Relations v. Bethlehem Steel,* 295 Md. 586, 592–596, 457 A.2d 1146, 1149–1151 (1983).

Finally, even when a disputed issue in an administrative proceeding might legitimately relate to the agency's subject matter jurisdiction, this Court has consistently taken the position that judicial review of the issue must await a final administrative decision unless "the agency is 'palpably without jurisdiction,' " *SEFAC v. MTA, supra,* 367 Md. at 382, 788 A.2d at 197, quoting *State v. State Board of Contract Appeals, supra,* 364 Md. at 458, 773 A.2d at 511. *State v. State Board of Contract Appeals* also involved a statutory coverage issue, namely whether a particular contract was a "procurement contract" and thus covered by the statute authorizing the administrative agency to resolve disputes under such contracts. One party insisted that the issue was "jurisdictional" and that, therefore, a court could resolve it prior to a final administrative decision. In holding that judicial consideration of the issue must await a final administrative decision, this Court stated that, "[r]egardless of how the 'procurement contract' issue is ultimately resolved, it is obvious that the Board of Contract Appeals is not 'palpably without jurisdiction.' " 364 Md. at 458, 773 A.2d at 511. As an example of a tribunal being "palpably without jurisdiction," we referred to the illustration discussed in *Parker v. State,* 337 Md. 271, 282–283, 653 A.2d 436, 441–442 (1995), of a probate court, invested

only with authority over wills and the estates of deceased persons, attempting to try someone for a criminal offense. *See also Board of License Commissioners v. Corridor, supra,* 361 Md. at 418, 761 A.2d at 924; *Montgomery County v. Ward,* 331 Md. 521, 527, 629 A.2d 619, 622 (1993); *Commission on Human Relations v. Mass Transit, supra,* 294 Md. at 235, 449 A.2d at 390.

The Human Relations Commission, by deciding to continue administrative proceedings on Mrs. Karasek's complaints, was clearly not acting "palpably without jurisdiction." Instead, it was in the process of resolving the types of issues which the Legislature intended it to resolve, including the issue of whether the defendant was an "employer" within the meaning of the statute.

## C.

As earlier mentioned, the defendant's principal reliance has been upon this Court's decision in *Equitable Trust Co. v. State Commission, supra,* 287 Md. 80, 411 A.2d 86. *Equitable Trust Co.* was an action by the Human Relations Commission to enforce an administrative subpoena, and this Court decided that the trial court should have declined to enforce the subpoena. The Court held that the subpoena should not have been enforced because the Commission had failed to comply with a statutory prerequisite for conducting an investigation after the filing of a complaint, and for issuing a subpoena as part of that investigation. The disputed issue in *Equitable Trust Co.* was whether, under what is now Art. 49B, § 9A(b), a complaint by the Commission on its own motion was required to be under oath. The Commission argued that any technical defects in a complaint should be ignored, that, moreover, a complaint by the Commission did not have to be under oath, and that, therefore, the complaint could properly be the basis for a subsequent investigation.[9] This Court disagreed, holding that

---

**9.** *See* Briefs and Record Extract in No. 53, Court of Appeals of Maryland, September Term 1979, appellee's brief at 17.

the statutory language required the Commission's complaint to be under oath.

In *Equitable Trust Co.*, no issue was raised by a party, or addressed by the Court, as to whether a significant defect in the complaint could be resolved in an action to enforce a subpoena. No argument was made in *Equitable Trust Co.* that the issue concerning the validity of the complaint should await a final administrative decision. In addition, where an investigation and subpoena are based upon a complaint, the basic validity of that complaint might logically be a prerequisite for proceeding with the investigation.

We need not at this time explore the question of whether the *Equitable Trust Co.* case was correctly decided, as the issue in that case was quite different from the statutory coverage issue in the case at bar. As previously discussed, a final ruling as to whether the defendant falls within the statutory definition of "employer" is not a prerequisite for the issuance and enforcement of the Commission's subpoena.

*JUDGMENT OF THE CIRCUIT COURT FOR BALTI-MORE CITY REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO ENTER AN ORDER ENFORCING THE SUBPOENA. COSTS TO BE PAID BY THE DEFENDANT–APPELLEE FREEDOM EX-PRESS/DOMEGOLD, INC.*