961 A.2d 647

Alice LEE–BLOEM

v.

STATE of Maryland, et al.

No. 2227 Sept.Term, 2007.

Court of Special Appeals of Maryland.

Dec. 4, 2008.

Alan Dumoff, Gaithersburg, MD and Jacques G. Simon, New York City, for Appellant.

George Breen, Washington, DC and Kathleen A. Ellis (Thomas W. Keech, Douglas F. Gansler, Atty. Gen., on brief), Baltimore, MD, for Appellees.

Panel: KRAUSER, C.J., WOODWARD and MATRICCIANI, JJ.

MATRICCIANI, Judge.

This appeal arises out of a complaint alleging that appellant, Dr. Alice Lee–Bloem, a licensed psychiatrist, provided substandard care to a patient under the Medical Practice Act, Md.Code (1981, 2005 Repl. Vol., 2008 Supp.), § 14–401 *et seq.* of the Health Occupations Article ("HO"). Appellant filed a verified complaint in the Circuit Court for Baltimore City against the State of Maryland, the Maryland Board of Physicians ("the Board") and its individual members, the Maryland Department of Health and Mental Hygiene and its Secretary, John M. Colmers (collectively the "State Appellees"); and the

Maryland Psychiatric Society and three peer reviewers assigned to the case by that body (collectively the "Society Appellees"). Appellant sought a declaratory judgment and permanent injunction against any further proceedings by the Board under both Maryland law and 42 U.S.C. § 1983 (2000).

The State Appellees moved to dismiss on the grounds that (1) appellant failed to exhaust her administrative remedies, (2) HO § 14–405(g) prohibits a pre-charge challenge to the Board's investigatory process, and (3) appellant failed to allege an actionable violation of her constitutional rights. The Society Appellees moved to dismiss on the same grounds, and also on the ground that appellant's claim under 42 U.S.C. § 1983 was not ripe.

The circuit court granted appellees' motions to dismiss appellant's complaint for failure to state a claim. Appellant appealed, and presents the following issues for our review, which we have slightly reworded:

I.   Whether the court erred in dismissing appellant's action based upon the doctrine of the exhaustion of administrative remedies.

II.  Whether the court erred in dismissing appellant's action pursuant to HO §§ 14–405(g) and 14–401(e)(5).

III. Whether the court erred in dismissing appellant's action as not ripe under 42 U.S.C. § 1983.

For the reasons below, we affirm the judgment of the circuit court.

## FACTS AND PROCEEDINGS

Appellant is a psychiatrist who is licensed by the Board to practice medicine in Maryland. On April 21, 2005, the Board sent appellant a letter advising her that a complaint had been filed against her for allegedly providing substandard medical care to a patient diagnosed with schizophrenia. The complaint, which was made by a psychologist who was also the patient's former domestic partner, alleged that appellant had improperly reduced and then withdrew the patient's medi-

cation, resulting in several psychotic episodes. The complaint also alleged that appellant (1) prides herself in getting her patients off of medication and into treatments containing only nutritional supplements; (2) recommends that her patients buy those expensive supplements from mail order companies; and (3) makes all of her diagnoses and treatment plans based on "muscle testing," which the complainant alleged is "a notoriously unreliable technique popular with orthomolecular medicine practitioners and naturopaths."

Pursuant to HO § 14–401(c)(2),[1] the Board referred the allegations to the Maryland Psychiatric Society ("the Society"), a non-profit entity with which the Board had contracted for the provision of peer reviews in cases involving psychiatrists.[2] The Society engaged three psychiatrists—Neil Brian Sandson, M.D., Michael Spodak, M.D., and Ellen G. McDaniel, M.D.—to review whether appellant had met the relevant standard of care. Those peer reviewers met with appellant between August and November of 2006.

On April 30, 2007, appellant filed a Verified Complaint for a Declaratory Judgment, a Permanent Injunction, and Other Temporary Relief in the Circuit Court for Baltimore City.

---

1. HO § 14–401(c)(2) provides:

    After performing any necessary preliminary investigation of an allegation of grounds for disciplinary or other action, the Board shall refer any allegation based on § 14–404(a)(22) of this subtitle [which relates to allegations of failure to meet the appropriate standard of care] to the entity or entities that have contracted with the Board under subsection (e) of this section for further investigation and physician peer review within the involved medical specialty or specialties.

2. The contract between the Board and the Society provides that peer reviewers shall be certified by the American Board of Medical Specialties or the American Osteopathic Association and have five or more years post-residency experience. The contract also provides that "the contractor shall ordinarily designate peer reviewers who are of the same specialty as the physician under investigation[,]" or alternatively, "the contractor may designate a peer reviewer of a different specialty, the practitioners of which often perform the same or similar type of procedures as that provided by the investigated physician or who often treat the same or similar medical problems as those for which the physician provided treatment."

Appellant alleged that the review process was not governed by sufficient rules, and requested the court to declare it violative of appellant's due process rights and therefore illegal and invalid. Appellant also contended that the peer reviewers were not qualified to determine whether she had complied with the appropriate standard of care because they were unfamiliar with the orthomolecular approach she employed. Appellant also alleged that one of the peer reviewers, Dr. Sandson, was an improper reviewer on conflict of interest grounds because he worked at a hospital at which appellant's patient had been previously treated. At the time appellant filed her complaint, the Board had not taken any disciplinary action or issued any charges against her.

On June 11, 2007, the State Appellees moved to dismiss on the grounds that appellant failed to exhaust her administrative remedies, HO § 14–405(g) prohibits a pre-charge challenge to the Board's investigatory process, and appellant failed to allege an actionable violation of her constitutional rights. On June 22, 2007, the Society Appellees moved to dismiss on the same grounds, and also on the ground that appellant's claim under 42 U.S.C. § 1983 was not ripe.

On October 26, 2007, the court held a hearing on appellees' motions. After hearing argument from all parties, the court stated that "the rules and regulations specify that [appellant's concerns] must be raised during the administrative process before [they are] brought to court." The court further added that the "[c]ase law makes it very clear that [appellant's] objections must first be made during the administrative process and then [they] can be made upon judicial review before this Court. Under the circumstances, that has not happened." Consequently, the court stated that it would grant appellees' motions to dismiss. On November 15, 2007, the court entered an order to that effect. This appeal followed.

## DISCUSSION

As questions of law, we review the issues raised by appellant *de novo*. *Garfink v. Cloisters at Charles, Inc.*, 392 Md. 374, 383, 897 A.2d 206 (2006).

## I.

Appellant argues that the court erred in dismissing her action based upon the doctrine of administrative exhaustion. Appellant argues that the doctrine does not apply in this case because the Board lacked proper jurisdiction insofar as it did not have regulations and procedures in place for the investigatory phase of its physician disciplinary process. Appellant also argues that the doctrine does not apply in this case because the Board's administrative process does not provide an adequate remedy to address her constitutional claims, and exhaustion of the administrative remedies available under the administrative scheme set forth in the Medical Practice Act was therefore futile. We disagree.

We initially note that the Maryland Uniform Declaratory Judgments Act, Md.Code (1973, 2006 Repl. Vol.), § 3–401 *et seq.* of the Courts and Judicial Proceedings Article ("CJP"), provides that the exhaustion of administrative remedies doctrine applies in the declaratory judgment context. CJP § 3–409(b) (providing that, "[i]f a statute provides a special form of remedy for a specific type of case, that statutory remedy shall be followed in lieu of a proceeding under this subtitle").

■■ Turning to appellant's allegation that the Board lacked jurisdiction to entertain her claim, the Court of Appeals has made clear that an agency is without jurisdiction "only where it lacks a clear authority to adjudicate a given class of claims." *Heery Int'l, Inc. v. Montgomery County*, 384 Md. 129, 144, 862 A.2d 976 (2004) (citing *State Comm'n on Human Relations v. Freedom Express/Domegold, Inc.*, 375 Md. 2, 19–20, 825 A.2d 354 (2003)). "Therefore, a party wishing to circumvent the administrative process must demonstrate that an agency is operating indisputably beyond its authority, and distinctly outside its fundamental jurisdiction." *Id.* at 144–45, 862 A.2d 976 (citing as an example a probate court, invested only with authority over wills and estates, attempting to try a person for a criminal offense).

■■ Applying that law to the facts of the case at bar, it is clear that the Board was not operating beyond its authority or

outside its jurisdiction. The Medical Practice Act authorizes the Board to investigate and charge physicians suspected of standard of care violations, and sets forth a detailed and comprehensive administrative process that the Board must follow in doing so. Thus, appellant's allegation that the Board violated the peer review provisions of the Act—even if proven to be true—does not deprive the Board of its jurisdiction to investigate whether appellant violated the Act's standard of care provisions.

█ Appellant's argument that the exhaustion of administrative remedies doctrine does not apply because the administrative process does not provide an adequate remedy to address her constitutional claims is also without merit. Appellant claims due process violations arising out of the lack of guidelines governing the peer review process, the peer reviewers' lack of qualifications, and Dr. Sandson's alleged conflict of interest. Appellant cites the Administrative Procedure Act, Md.Code (1984, 2004 Repl. Vol.), § 10–101 *et seq.* of the State Government Article, and the Code of Maryland Regulations as limiting the authority of the Office of Administrative Hearings to hear and rule on peer review challenges because its jurisdiction does not attach until charges are brought. We disagree.

HO § 14–405(g) provides that "[t]he hearing of charges may not be stayed or challenged by any procedural defects alleged to have occurred prior to the filing of charges." Furthermore, the Court of Appeals has succinctly stated that "questions, including Constitutional issues, that could have been but were not presented to the administrative agency may not ordinarily be raised for the first time in an action for judicial review." *Bd. of Physician Quality Assur. v. Levitsky*, 353 Md. 188, 207–08, 725 A.2d 1027 (1999). The Court in *Levitsky* therefore made clear that challenges such as the ones appellant now raises before us must first be raised in an administrative hearing in order to be preserved for judicial review.

█ The *Levitsky* Court did provide one exception to the rule, explaining that,

[t]o the extent that deficiencies or irregularities in the pre-charge proceedings actually compromise the accused's opportunity for a full and fair hearing on the charges ... or suffice in some way to deprive the agency (or court) of true jurisdiction to proceed, the accused is necessarily entitled, and must be allowed, to raise those deficiencies or irregularities, notwithstanding [HO § 14–405(g) ]. Beyond that, however, [HO § 14–405(g) ] means what it says and must be given effect.

*Id.* at 206, 725 A.2d 1027. In other words, an alleged constitutional violation alone is not sufficient to sidestep the administrative process set forth in the Medical Practice Act and proceed directly to the courts. Rather, the alleged violation must actually compromise the accused's opportunity for a fair hearing such that exhausting the administrative remedies would be futile.

We are not persuaded that appellant was denied her right to a full and fair administrative hearing, constitutional claims notwithstanding. The contract between the Board and the Society contains specific guidelines regulating the peer review process.[3] That contract also includes the qualifications required of peer reviewers, which, contrary to appellant's argument, do not require that peer reviewers employ the same particular type of treatment as the investigated physician. That contract also includes provisions assuring against conflicts of interest between peer reviewers and investigated physicians.[4]

---

**3.** Those guidelines include the method by which peer reviewers must complete their reports and the content that is required therein, which includes a demonstration by the reviewer of knowledge of the medical treatment at issue, a statement of the standard of care required under the circumstances, and a statement and explanation of whether that standard was met.

**4.** Those provisions prohibit the use of peer reviewers who are a relative, personal friend, business partner, supervisor, or employee of either the patient or the investigated physician. They also prohibit peer reviewers who have a substantial business relationship with the investigated physician whether through a legal relationship or a pattern of referrals,

In short, even assuming, *arguendo,* that appellant's due process rights were violated, we are not convinced that appellant could not fairly argue those alleged constitutional violations within the administrative scheme set forth in the Medical Practice Act. Indeed, if appellant were unsatisfied with the outcome of that administrative process, she was entitled to further judicial review. Consequently, we hold that there is no prohibition against an administrative law judge hearing and ruling upon the three specific peer review issues raised by appellant, and it was therefore not futile for appellant to exhaust her administrative remedies.

## II.

Appellant argues that it is unclear whether the court dismissed appellant's action pursuant to two sections of the Medical Practice Act, namely HO §§ 14–405(g) and 14–401(e)(5), but if it did, it did so erroneously. Appellant claims that both of those statutes are "anti-injunction statutes aimed at staying a disciplinary hearing in progress," and are therefore inapplicable because, at the time appellant brought her action, no hearing was in progress. Appellant further argues that HO § 14–401(e)(5), a statute which does not provide for retroactive application, is not applicable to her action because it was enacted in June 2007, several months after she filed her action in April 2007. We disagree.

HO § 14–405(g) provides that "[t]he hearing of charges may not be stayed or challenged by any procedural defects alleged to have occurred prior to the filing of charges." HO § 14–401(e)(5) provides that "[t]he hearing of charges may not be stayed or challenged because of the selection of peer reviewers under this subsection before the filing of charges."

While the circuit court did not expressly identify "the rules and regulations" that barred appellant's bypass of the administrative process, taken in the context of the memo-

---

and require each peer reviewer to declare in writing that no relationship exists which would interfere with his or her objective judgment.

randa and oral argument before it at the time of its ruling, there can be no doubt that the court was referring to HO § 14–405(g) and/or HO § 14–401(e)(5). Moreover, "we presume judges to know the law and apply it, even in the absence of a verbal indication of having considered it." *Wagner v. Wagner,* 109 Md.App. 1, 50, 674 A.2d 1, *cert. denied,* 343 Md. 334, 681 A.2d 69 (1996). Indeed, "trial judges are not obliged to spell out in words every thought and step of logic." *Aventis Pasteur, Inc. v. Skevofilax,* 396 Md. 405, 426, 914 A.2d 113 (2007) (citation omitted).

■ Appellant cites no authority, nor could we find any, for her argument that HO §§ 14–405(g) and 14–401(e)(5) should be construed to allow interruption of the investigatory stage. As we have already noted, the Court of Appeals has explained that HO § 14–405(g) "means what it says and must be given effect." *Levitsky,* 353 Md. at 206, 725 A.2d 1027. The *Levitsky* Court therefore construed HO § 14–405(g) narrowly, and only allowed for deviation from that statute's prohibition of pre-charge interruption when the accused's rights to a fair administrative hearing are compromised. *Id.* We have already concluded, however, that no such compromise existed under the facts of the case before us. Thus, we conclude that the court did not err in dismissing appellant's claim under HO § 14–405(g).

Because we hold that the court did not err in dismissing appellant's case pursuant to HO § 14–405(g), we need not consider whether the court erred in relying upon HO § 14–401(e)(5).

### III.

Appellant argues that the court erred in dismissing her action as not ripe under 42 U.S.C. § 1983. We disagree.

In *Broadcast Equities, Inc. v. Montgomery County,* 123 Md.App. 363, 718 A.2d 648 (1998), *vacated and remanded on other grounds,* 360 Md. 438, 758 A.2d 995 (2000), we dealt with a similar issue. In that case, the Montgomery County Com-

mission on Human Relations issued a written determination that reasonable grounds existed to believe that Broadcast Equities had unlawfully discriminated against a former employee. *Id.* at 373, 718 A.2d 648. The Commission scheduled a hearing on the matter, and Broadcast Equities filed suit to enjoin the hearing pursuant to 42 U.S.C. § 1983 on the grounds that enforcement of the county code violated its due process rights. *Id.* at 373–74, 718 A.2d 648. We held that "the Commission's decision that reasonable grounds exist to believe that [Broadcast Equities] violated the County Code is not 'final,' and thus not ripe for review." *Id.* at 404, 718 A.2d 648. Citing earlier precedent, we reiterated:

> The administrative process would come to a standstill if parties that are the subject of agency investigations could file parallel lawsuits seeking to adjudicate an issue that is before the agency. As a matter of administrative law, and as a matter of equity, a government agency needs to be able to do its work. There would scarcely be a purpose for an agency ... if a party involved in a proceeding before the agency could make an "end run" around it by obtaining judicial adjudication of the same issues that are then pending before the agency.

*Id.* at 405, 718 A.2d 648 (quoting *Maryland Comm'n on Human Relations v. Downey Commc'ns, Inc.,* 110 Md.App. 493, 524–25, 678 A.2d 55 (1996)).

■ In the case at bar, appellant filed her claim after the peer review process had concluded but before the Board had decided whether to file charges. As in *Broadcast Equities,* the Board's decision to investigate appellant and conduct peer reviews pursuant to the Medical Practice Act was not a "final" decision. *Levitsky,* 353 Md. at 206, 725 A.2d 1027 (explaining that "[t]he peer review panel does not determine whether the accused physician or attorney is 'guilty' of anything, only whether there is a sufficient basis for the filing of charges"). Consequently, we conclude that the court did not err in dismissing appellant's claim on the grounds that her 42 U.S.C.

§ 1983 claim was not ripe.[5,6]

## JUDGMENT AFFIRMED.

## COSTS TO BE PAID BY APPELLANT.

---

5. Although we need not rely upon it to affirm the circuit court's dismissal of appellant's 42 U.S.C. § 1983 claim, we note that an alternative ground on which the court could have relied is appellant's lack of an injury to a requisite property interest insofar as the Board had neither filed charges nor revoked her medical license at the time she filed her action. *See Wilkinson v. Austin*, 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005) (stating that the "Due Process Clause protects persons against deprivations of life, liberty, or property[,] and those who seek to invoke its procedural protection must establish that one of these interests is at stake").

6. Because we affirm the court's dismissal of appellant's complaint, appellant's Notice of Appeal dated December 12, 2007, regarding the discovery orders of the circuit court, is moot. Therefore, we need not address Society Appellees' motion to dismiss it.