862 A.2d 976

**HEERY INTERNATIONAL, INC., et al.**

v.

**MONTGOMERY COUNTY, MARYLAND, et al.**

**No. 15, Sept. Term, 2004.**

Court of Appeals of Maryland.

Dec. 6, 2004.

130

Patrick James Attridge (John A. King, King & Attridge, Rockville, Bruce E. Titus, Rees, Broome & Diaz, P.C., Vienna, VA, on brief), for appellants.

John J. Fisher, Assoc. Cty. Atty. (Charles W. Thompson, Jr., Cty. Atty., Karen L. Federman Henry, Principal Counsel for Appeals, Rockville, on brief), for appellees.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

HARRELL, Judge.

This case represents an initiative by Heery International, Inc. ("Heery International") and Hellmuth, Obata & Kassabaum, P.C. ("HOK") (sometimes collectively referred to as "Heery") to circumvent Montgomery County's (the "County") administrative dispute resolution process for claims relating to local public works contracts. They seek to truncate that process on the ground that the process and the County's designated administrative adjudicator are "palpably without jurisdiction" to decide the particular dispute in this case. Heery shall not succeed.

## I.

On 1 December 1989, Heery Program Management, Inc. entered into a contract with the County to provide construction management services relating to a proposed detention center in Clarksburg, Maryland. Nine years later, on 9 October 1998, that contract was assigned to the related entity of Heery International. Approximately one year earlier, HOK entered into a separate contract with the County to provide architectural and engineering services relating to the design of the detention center.

Believing that it furthered the goal of facilitating construction of the detention center, the County awarded separate contracts to various construction trade contractors rather than contracting with one prime contractor who thereafter would arrange for subcontracts with more specialized trade contractors. Under this "multi-prime" arrangement, Heery International and HOK were responsible to the County to manage the various trade contractors, including preparing detailed schedules, determining the cause of delays, and managing payment and claim matters. Before it became aware of any alleged deficiencies in Heery International's or HOK's performance, the County paid Heery International more than $5,680,000 and HOK more than $5,370,000, representing full payment for their services.

In a letter dated 17 July 2003, the County made a formal demand on Heery International and HOK for payment in the amounts of $2,450,959 and $3,804,163, respectively. These amounts represented damages the County allegedly suffered as a result of lost productivity and delay caused by Heery International and HOK's mismanagement of the trade contractors. The letter also demanded that Heery International and HOK, pursuant to provisions in their respective contracts with the County, provide a legal defense and indemnify the County with regard to claims totaling over $13 million lodged by some of the trade contractors.[1] Moreover, the letter

---

1. Included in both Heery International and HOK's contracts with the County were provisions requiring that each indemnify and provide legal

demanded an additional $915,168 for the actual legal costs incurred by the County, up to that point, in defense of the trade contractors' claims.

The letter concluded by stating that, if the claims were not resolved within thirty days, the County would file its claims with the County's Director of the Department of Public Works and Transportation ("DPW & T"), as provided for by both Heery International's and HK's contracts and the Montgomery County Procurement Regulations ("Procurement Regulations").[2] The relevant provision of the Heery International contract[3] stated:

> "8. DISPUTES. Any dispute arising under this contract which is not disposed of by agreement must be decided under The Montgomery County Code and The Montgomery County Procurement Regulations."

Heery International and HOK, in letters dated 13 August 2003 and 12 August 2003, respectively, denied responsibility for the County's substantive claims. They also denied that the County's claims were subject to the dispute resolution process outlined in the Montgomery County Code ("County Code") and Procurement Regulations. Although acknowledging that their respective contracts with the County authorized the use of the County administrative contract dispute resolution process, Heery International and HOK claimed that

---

defense for the County in regard to "any loss, cost, damage and other expenses, including attorney's fees and litigation expenses, suffered or incurred due to the contractor's negligence or failure to perform any of its contractual obligations." The contracts also stated that, at the County's request, "the contractor must defend the County in any action or suit brought against the County arising out of the contractor's negligence, errors, acts or omissions under this contract."

2. At oral argument, counsel for the County conceded that, although the contracts provided that any dispute would be decided under the County ordinance's administrative dispute resolution process, the provisions in the contracts did not enlarge the jurisdiction of the County administrative agency beyond that supported by the language of the ordinance and regulations.

3. The HOK contract includes near-identical language.

the County Code and the Procurement Regulations applied "solely to contractor claims against the County and are inapplicable to claims by the County against a contractor." Although the County Procurement Regulations expressly allow the County to implead other responsible contractors into the administrative process initiated against the County by a contractor, Heery International and HOK claimed that this mechanism was not relevant in their situation because the County initiated the proceeding. In support of their assertion, the contractors relied on Maryland case law that they claimed "construed identical language in the State's procurement regulations to exclude claims that are asserted by the government."

On 14 August 2003, the County submitted its claims to its Director of DPW & T. Four days later, Heery filed a complaint in the Circuit Court for Montgomery County seeking declaratory and equitable relief preventing the County or the Director from pursuing any remedy through the administrative dispute resolution process outlined in the County Code and Procurement Regulations. The County responded with a motion to dismiss, asserting that any question of an administrative agency's jurisdiction should be decided in the first instance during the pertinent administrative process. On 3 November 2003, the Circuit Court denied Heery's request for equitable relief, and entered a declaratory judgment that "the administrative agency is not 'palpably without jurisdiction' to adjudicate the underlying dispute." The court also denied Heery's request for a stay of the administrative proceedings, concluding instead that they were required to exhaust their administrative remedies before seeking judicial review or intervention.

Heery noted an appeal to the Court of Special Appeals. Before the intermediate appellate court could decide the case, this Court, on its initiative, issued a writ of certiorari, 381 Md. 324, 849 A.2d 473 (2004), in order to consider the following question, rephrased for the sake of clarity:

Did the trial court err in holding that the Montgomery County Department of Public Works and Transportation

was not "palpably without jurisdiction" to adjudicate a dispute brought by the County against a contractor?

## II.

Chapter 11B of the County Code, in conjunction with the County's Procurement Regulations, outlines the administrative dispute resolution process for disputes arising between contractors and the County.[4] Mont. Co.Code § 11B (2004); Mont. Co. Proc. Regs. § 14.2 (2004). Section 11B–35 of the County Code states that a "contractor must submit any dispute arising under a contract to the Director [of the Office of Procurement]." Mont. Co.Code § 11B–35(a). The County Code defines a "contractor" as "any person that is a party to a contract with the County." *Id.* § 11B–1(f). Moreover, the Procurement Regulations define a "dispute" as a "timely complaint filed by a contractor disagreeing with a decision made by an authorized government official regarding the contract." Mont. Co. Proc. Regs. § 2.4.40.

When a dispute arises between a contractor and the County, the Procurement Regulations mandate that the contractor and the contract administrator must attempt to resolve the claim. *Id.* § 14.2.2.1. If the parties are unable to resolve the dispute, the contractor must submit the dispute to the Director of the Office of Procurement ("Director") within 30 days of the event giving rise to the claim, unless the parties contract otherwise. *Id.* The Director then reviews any documents submitted with the filed dispute and within 45 days either renders a decision on the claim or makes a determination that the claim involves factual disputes and is beyond the ability of the Director to make a decision. *Id.* § 14.2.2.3(a). Regardless of the Director's decision, a contractor may then file a contract dispute appeal with the County's Chief Administrative Officer ("CAO"). *Id.* § 14.2.2.3(b).

---

**4.** There are no material differences in the 2004 Code and Regulations and the versions in place at the time of occurrence of the operative facts in this case.

During the contract dispute appeal process, the CAO reviews the dispute de novo. *Id.* § 14.2.2.9. If, based on the paper record, the CAO is able to determine whether the claim has merit, the CAO may, within 30 days, either deny the claim or order an appropriate remedy. *Id.* § 14.2.2.9(a)-(b). If the CAO is unable to decide a claim on the paper record, the CAO may conduct a hearing or designate a hearing officer to hear the claim. *Id.* § 14.2.2.9(c). During the hearing process, the parties may take advantage of discovery and other procedures outlined in the Procurement Regulations intended to insure a fair adversarial hearing. *Id.* § 14.2.3. If the CAO designates a hearing officer to hear the dispute, the hearing officer must make recommended findings of fact and conclusions, which are then submitted to the CAO. *Id.* § 14.2.2.9(c). The CAO then has 30 days to render a written decision on the appeal. *Id.* Once the CAO renders a written decision, that decision is final for administrative purposes and subject to judicial review in the Circuit Court for Montgomery County. *Id.* § 14.2.2.9(d).

## III.

Heery claims that, because the County Code and Procurement Regulations do not authorize the County to utilize its administrative dispute resolution process to litigate a claim that it asserts against a party with which it has contracted, the agency is acting clearly outside the bounds of its jurisdiction by entertaining the County's claim. Therefore, Heery deems itself entirely justified in seeking to sidestep what it perceives as an unauthorized administrative process.

We have long held that "[w]here an administrative agency has primary or exclusive jurisdiction over a controversy, the parties to the controversy must ordinarily await a final administrative decision before resorting to the courts for resolution of the controversy." *State v. Bd. of Contract Appeals,* 364 Md. 446, 457, 773 A.2d 504, 510 (2001); *Converge Services Group, LLC v. Curran,* 383 Md. 462, 481–82, 860 A.2d 871, 882 (2004) (stating that "[w]hen a statute explicitly directs an administrative process and remedy, our policy is set clearly by the General Assembly to maintain the uniformity of the regu-

latory scheme" by requiring exhaustion of administrative remedies); *see also Soley v. State Comm'n on Human Relations,* 277 Md. 521, 526–27, 356 A.2d 254, 257–58 (1976) (detailing the policy reasons behind the exhaustion requirement). This rule, however, is not without exceptions. For example, our case law indicates that exhaustion of administrative remedies will not be required when a party can demonstrate that an administrative tribunal is "palpably without jurisdiction." *See, e.g., State Comm'n on Human Relations v. Freedom Express/Domegold, Inc.,* 375 Md. 2, 19, 825 A.2d 354, 364 (2003) (finding that "this Court has consistently taken the position that judicial review of [an] issue must await a final administrative decision unless 'the agency is "palpably without jurisdiction" ' ").

Although the "palpably without jurisdiction" standard, described as such, was first recognized in Maryland case law in *Maryland Commission on Human Relations v. Mass Transit Administration,* 294 Md. 225, 449 A.2d 385 (1982) (*"MTA"*), the notion of an administrative tribunal being assailed in Maryland courts prior to a final agency decision, based on an assertion that the agency was engaged in an action outside of its jurisdiction or authority, was discussed earlier in *Soley,* 277 Md. at 526–27, 356 A.2d at 257–58. In *Soley,* a landlord, charged by the Commission on Human Relations with unlawful discrimination challenged the Commission's issuance of subpoenas during a preliminary investigation as exceeding the scope of statutory authority granted to the Commission. The Court held that because the statute provided an administrative remedy, the landlord was required to exhaust that remedy, even if the interlocutory act of the administrative agency was alleged to be ultra vires or illegal. *Soley,* 277 Md. at 528, 356 A.2d at 258.

The Court in *MTA* reaffirmed the principle that administrative remedies ordinarily must be exhausted, absent certain extraordinary circumstances. 294 Md. at 230–35, 449 A.2d at 387–90. In *MTA,* three women were denied employment by the MTA because they were overweight. When the women filed complaints with the Maryland Commission on Human

Relations, the Commission investigated and determined that there was probable cause to believe that the MTA had discriminated unlawfully against the women based on a physical handicap. Before the Commission could hold a hearing on the women's claims, however, the MTA filed a bill for declaratory and injunctive relief in the Circuit Court for Baltimore City asking the court to declare that obesity was not a physical handicap under the relevant statute and "that the Commission has neither the power, authority nor jurisdiction to consider obesity as a physical handicap." *Id.* at 228, 449 A.2d at 386. The Commission filed a demurrer,[5] arguing that the MTA was required to exhaust the administrative remedy before resort to a judicial forum. The circuit court rejected the Commission's argument, concluding instead that exhaustion of administrative remedies was not necessary because "the issue here is purely one of statutory interpretation." *Id.* We, however, rejected that argument as "contrary to the settled law of Maryland," opining instead that Maryland law favored the resolution of issues of statutory interpretation in the first instance by the administrative agency. *Id.* at 232–33, 449 A.2d at 389. The Court reasoned that allowing the MTA to circumvent the administrative process would be "inconsistent with the principle that the agency's construction of a statute which it administers is entitled to weight." *Id.* at 233, 449 A.2d at 389.

The Court also disagreed with the MTA's characterization of the dispute:

> The MTA in the present case has couched the statutory interpretation issue in terms of the Commission's "authority" or "power" or "jurisdiction," and has charged that the Commission is attempting to "expand" its jurisdiction and proceed in an unauthorized manner. Nevertheless, many, if

---

**5.** A demurrer was a pleading in which a party asserted that, as a matter of law, relief could not be granted on the facts alleged in the complaint. Paul V. Niemeyer & Linda M. Schuett, *Maryland Rules Commentary* 206 (3rd ed.2003). The demurrer's modern counterpart, the motion to dismiss for failure to state a claim upon which relief can be granted, is codified in Maryland Rule 2–322(b)(2).

not most, statutory interpretation issues arising in administrative proceedings could be phrased in terms of the agency's "authority," "power" or "jurisdiction" to take a certain type of action in a specific case. A party's argument that an agency will be exceeding its authority if it ultimately interprets the statute and decides the case contrary to that party's position, does not excuse the failure to await a final agency decision.

*Id.*

The possibility that extraordinary circumstances could provide a basis for absolving the usual obligation to exhaust available administrative remedies was not foreclosed. *Id.* at 235, 449 A.2d at 390. Borrowing language from Professor Davis' 1958 *Administrative Law Treatise*, the Court assumed that exhaustion of administrative remedies would not be required where it is shown that an "agency is palpably without jurisdiction." [6] *Id.* (citing Kenneth Culp Davis, *Administra-*

---

6. Maryland appears to be one of a small group of jurisdictions that continue to use the descriptive "palpably without jurisdiction" for the threshold principle. Based on a national search, only 17 judicial opinions were found that utilize the "palpably without jurisdiction" language in an administrative context (including the present one). More than half of those opinions are from this Court. Of the ten opinions that have used this phrase in the last twenty years, eight of these opinions are from this Court, with the other two from Idaho courts. *See, e.g., Regan v. Kootenai County,* 100 P.3d 615, 2004 WL 2418337 (Idaho Oct. 20, 2004); *Fairway Dev. Co. v. Bannock County,* 119 Idaho 121, 804 P.2d 294 (1990).

These cases all derive their use of the exact phrase from the following passage in Professor Davis's 1958 edition of his *Administrative Law Treatise:*

The law embodied in the [Supreme Court] holdings clearly is that sometimes exhaustion is required and sometimes not. No court requires exhaustion when exhaustion will involve irreparable injury and when the agency is *palpably without jurisdiction;* probably every court requires exhaustion when the question presented is one within the agency's specialization and when the administrative remedy is as likely as the judicial remedy to provide the wanted relief. In between these extremes is a vast array of problems on which judicial action is variable and difficult or impossible to predict.

Kenneth Culp Davis, *Administrative Law Treatise,* § 20.01 (1958) (emphasis added).

*tive Law Treatise,* § 20.01 (1958)). Although the Court in *MTA* did not elaborate on the meaning or scope of such a standard, it did conclude that because the Commission indeed had jurisdiction over employment discrimination cases, it therefore had jurisdiction over any attempt to interpret a statute relating to that regulated field. *Id.*

In *Montgomery County v. Ward,* 331 Md. 521, 629 A.2d 619 (1993), Judge Eldridge, writing for the Court, confirmed [7] the

---

It is curious to note, however, that the exact wording, i.e. "palpably without jurisdiction," noticeably is absent from subsequent editions of the treatise. The 2002 edition, for example, fails to make use of the "palpably without jurisdiction" descriptive phrase, even though it discusses and expands upon the "three-part test proposed in the 1958 treatise" for when administrative exhaustion is not required. Richard J. Pierce, Jr., *Administrative Law Treatise,* § 15.2 (4th ed.2002) (revised edition of Kenneth Culp Davis & Richard J. Pierce, Jr., *Administrative Law Treatise,* § 15.2 (3rd ed.1994)).

Although Professor Davis and his subsequent collaborators apparently abandoned this choice of language beginning with the 1983 edition (one year after this Court first utilized the "palpably without jurisdiction" standard in *MTA,* 294 Md. at 235, 449 A.2d at 390), Maryland courts retained the description and developed a standard that shares some of the principles of, but does not completely mirror, the exhaustion doctrine outlined in the most recent edition of the treatise.

7. Although some of the discussion in our cases merely "assumes, without deciding," the existence as part of Maryland administrative law of the "palpably without jurisdiction" exception to the normal requirement of administrative exhaustion, the evolution of the standard indicates its availability in the appropriate case. *Compare MTA,* 294 Md. at 235, 449 A.2d at 390 (stating that "[i]t may well be that exhaustion of administrative remedies is not required where an 'agency is palpably without jurisdiction.' "), *Bd. of License Comm'rs v. Corridor Wine, Inc.,* 361 Md. 403, 418, 761 A.2d 916, 924 (2000) (finding that this Court has "assumed, without deciding, that there may be an exception to this [exhaustion] principle where an administrative agency is ' "palpably without jurisdiction." ' "), and *State v. Bd. of Contract Appeals,* 364 Md. 446, 457–58, 773 A.2d 504, 511 (2001) (stating that "[i]n situations where a controversy or matter is pending before an adjudicatory administrative agency, we have assumed, without deciding, that a party need not await a final administrative decision where the administrative ' "agency is palpably without jurisdiction." ' "), *with Ward,* 331 Md. at 527, 629 A.2d at 622 (stating that "[w]e have held that the 'exception' relied upon by the employer is applicable only under circumstances 'where an "agency is palpably without jurisdiction" ' "), *SEFAC Lift & Equip. Corp. v. Mass Transit Admin.,* 367 Md. 374, 382–83, 788 A.2d 192, 197 (2002) (stating that the Court has "recognized that a party

availability of the "palpably without jurisdiction" exception to the principle of administrative exhaustion in Maryland. *Id.* at 527, 629 A.2d at 622. In *Ward,* the Workers' Compensation Commission, after denying a worker's claims for compensation, also denied his motion for a rehearing. A few weeks later, the worker, Ward, requested that the Commission reconsider its denial of the rehearing. The Commission complied, and rescinded the earlier order denying the rehearing. Ward's employer filed an action for judicial review in circuit court, arguing that the granting of a rehearing was not authorized by either the Workers' Compensation statute or the Commission's rules. After the circuit court granted summary judgment to Ward on the merits of the case, Ward's employer appealed the judgment to the Court of Special Appeals, which also concluded that the Commission had continuing jurisdiction over Ward's claim to grant a rehearing. *Id.* at 525, 629 A.2d at 621.

This Court declined to rule on the merits and vacated the judgment, determining instead that Ward's employer was not entitled to resort to a judicial forum while the administrative process was pending. *Id.* at 527–29, 629 A.2d at 622–23. The Court held that, in order for the employer to sidestep the administrative process, it must demonstrate that the Commission was "palpably without jurisdiction" to adjudicate Ward's claims. *Id.* at 527, 629 A.2d at 622. Relying on the distinction made in *MTA,* the Court expansively concluded that, because the "jurisdiction" of the Commission embraced matters involv-

---

need not await a final administrative decision when the agency is 'palpably without jurisdiction' "), *and Freedom Express/Domegold,* 375 Md. at 19, 825 A.2d at 364 (stating that "this Court has consistently taken the position that judicial review of the issue must await a final administrative decision unless 'the agency is "palpably without jurisdiction" ' "). In no case, however, has this Court ultimately concluded that an administrative agency actually was "palpably without jurisdiction" to adjudicate in any case the particular claim at issue. *But see Ward,* 331 Md. at 529–30, 629 A.2d at 623 (McAuliffe, J., dissenting) (reasoning that Workers' Compensation Commission was "palpably without jurisdiction" to rehear a worker's claim when the rehearing power under the circumstances was beyond the authority of the commission).

ing workers' compensation claims, the Commission therefore was not "palpably without jurisdiction" to decide claims involving workers' compensation matters. *Id.*

We faced a similar question of statutory interpretation in *State v. Board of Contract Appeals*, 364 Md. 446, 773 A.2d 504 (2001), in which a private law firm filed a complaint with the Board of Contract Appeals concerning the proper interpretation of a contingent fee contract to represent the State in litigation against the tobacco industry. The State brought a judicial action in circuit court, arguing that the Board did not have jurisdiction over the complaint because the Board was only authorized to hear disputes concerning procurement contracts. The legal representation agreement, the State argued, could not be characterized as a procurement contract. The circuit court granted declaratory relief stating that the contract in question was in fact a procurement contract, and therefore the Board possessed primary jurisdiction over the claim. This Court, however, held that declaratory relief was premature, and that the proper forum for initial adjudication of the claim was the administrative process. *Id.* at 457–58, 773 A.2d at 510–11. The Court held that it was "obvious" that the Board was not "palpably without jurisdiction," and that because the Board was authorized to hear disputes involving procurement contracts, any judicial consideration of the threshold issue whether the contract was a procurement contract should abide an initial determination by the administrative agency. *Id.*

Although the cases discussed above held that the particular issues of statutory interpretation should be decided in the first instance by the administrative agency charged with interpreting the particular statute, the Court also indicated that an agency may be "palpably without jurisdiction" if a party challenges the underlying fundamental subject matter jurisdiction of the agency. The *Ward* Court, for instance, expounded on the concept of jurisdiction for purposes of administrative exhaustion, holding that, in order to invoke the "palpably without jurisdiction" standard, the agency's actions must concern the agency's "fundamental 'jurisdiction.'" 331 Md. at

527, 629 A.2d at 622. As in *MTA*, the Court found that the procedural dispute in *Ward* did not involve necessarily an issue of jurisdiction, but rather an issue of statutory interpretation or authority that was best addressed initially by the agency charged with resolving claims under that statute. *Id.* at 527–28, 629 A.2d at 622.

In *Board of License Commissioners v. Corridor Wine, Inc.*, 361 Md. 403, 761 A.2d 916 (2000), this Court further explored the interplay between issues of statutory interpretation and those of jurisdiction. The Court narrowed the notion of what constitutes a purely jurisdictional question by holding that

[s]imply because a statutory provision directs a court or an adjudicatory agency to decide a case in a particular way, if certain circumstances are shown, does not create an issue going to the court's or agency's subject matter jurisdiction. There have been numerous cases in this Court involving the situation where a trial court or an adjudicatory agency has jurisdiction over the subject matter, but where a statute directs the court or agency, under certain circumstances, to exercise its jurisdiction in a particular way, or to rule in favor of a respondent, or to dismiss the case, and the tribunal erroneously refuses to do so because of an error of statutory interpretation or an error of fact. In these situations, this Court has regularly held that the matter did not concern the subject matter jurisdiction of the trial court or the agency.

*Id.* at 417–18, 761 A.2d at 923.

In *Freedom Express/Domegold*, the Court added further clarity to the concept of "fundamental jurisdiction" for purposes of challenging the normal expectation of administrative exhaustion. 375 Md. at 19–20, 825 A.2d at 364–65. The Court held that an agency may be "palpably without jurisdiction" only where it lacks a clear authority to adjudicate a given class of claims. *Id.* As a hypothetical example of an agency lacking palpable jurisdiction, the Court conjured the notion "of a probate court, invested only with authority over wills and the estates of deceased persons, attempting to try someone for

a criminal offense." *Id.* at 19–20, 825 A.2d at 364. Therefore, a party wishing to circumvent the administrative process must demonstrate that an agency is operating indisputably beyond its authority, and distinctly outside its fundamental jurisdiction.

 Whether the County Code and Procurement Regulations in the present case contemplate a claim initiated by the County against a contractor "is a typical statutory interpretation or application issue to be determined by a final administrative decision and to be judicially reviewed" only after the administrative remedy has been exhausted. *Id.* at 13, 825 A.2d at 361. We consistently have held that statutes should be interpreted in the first instance in contested cases by the administrative agency, especially in those instances in which the agency possesses specialized knowledge or expertise regarding the underlying subject matter of the statute. *Id.* at 19–20, 825 A.2d at 364–65. Allowing an agency to interpret a statute in the first instance not only provides the court with a complete record and hopefully a rationalized interpretation, but also aids in judicial economy by preventing piecemeal and interlocutory appeals from administrative decisions. *Soley,* 277 Md. at 526, 356 A.2d at 257 (stating that "to permit interruption for purposes of judicial intervention at various stages of the administrative process might well undermine the very efficiency which the Legislature intended to achieve in the first instance"). Heery's claim that the County's administrative dispute resolution process is without jurisdiction must yield to the requirement that all administrative remedies be exhausted. The agency should be given an opportunity to interpret its own statutes, and the administrative process allowed to proceed without improvident interruption. Even though the present dispute involves what could be characterized as a matter of statutory interpretation, the agency is in the best position to provide an initial determination as to whether the County Code and Procurement Regulations confer authority on the County to bring a claim against a contractor via that process. *See MTA,* 294 Md. at 233, 449 A.2d at 389 (holding that the interpretation of the agency charged

with administering a statute should be given weight by a reviewing court). The Director and CAO are charged with interpreting and applying the County Code and the Procurement Regulations on a regular basis, and therefore their ability to render an informed decision should not be discounted. Although the Maryland judiciary is indeed capable of adjudicating the matter at hand, the courts and Heery should wait to weigh-in until the administrative process has been exhausted.

## IV.

Heery, however, persists that they should not be forced to suffer through a futile administrative process when there exists clear case law supporting the notion that the agency's consideration is without color of authority. On this score, Heery offers by analogy as conclusive the holding in *University of Maryland v. MFE, Inc.*, 345 Md. 86, 691 A.2d 676 (1997).

## A.

In *MFE*, the University of Maryland informed one of its contractors, MFE, that the University was asserting a claim against the contractor for costs related to delay and design deficiencies in the construction of a campus library building. MFE denied responsibility, and the University submitted the claim to the State administrative process. Pursuant to that process, the director of the University's Department of Procurement and Supply determined that the State was entitled to be indemnified for costs relating to MFE's deficiencies. The administrative regulations provided that, after an adverse decision was made by the administrative agency, the decision could be appealed, within 30 days, to the State Board of Contract Appeals ("BCA"). MFE noted an appeal to the BCA, but the University moved to dismiss the appeal on the ground that it was untimely.[8] The BCA agreed and dismissed MFE's appeal. MFE sought judicial review in the Circuit

---

8. The timeliness issue asserted by the University in *MFE* concerned whether the use of a fax machine and telephone follow-up satisfied the

Court for Baltimore County, which reversed the BCA ruling on the timeliness issue. An appeal to the Court of Special Appeals ensued.

This Court, taking the case from the intermediate appellate court before it decided the matter, declined to consider the timeliness issue. *Id.* at 92, 691 A.2d at 679. Instead, the Court framed and decided an issue of its own creation, holding that the State's administrative adjudicatory scheme lacked jurisdiction over the University's claim because neither the Maryland Code nor its regulations contemplated an affirmative claim by a governmental entity against a contractor. *Id.*

The dispute in *MFE* implicated the administrative process outlined in Md.Code (1985, 2001 Repl.Vol.), §§ 15–201—15–223 of the State Finance and Procurement Article ("State Procurement Statute"). Under this statutory scheme, a "person who has been awarded a procurement contract may submit a contract claim to the procurement officer." § 15–217(a)(2). The Court observed that there is "no provision in § 15–217 or, to our knowledge, in any other part of the subtitle, permitting the State unit to file either a protest or a contract claim." *MFE,* 345 Md. at 92–93, 691 A.2d at 679. In concluding that the statutory language demonstrated that there was "no statutory basis of BCA jurisdiction over a claim filed by . . . the State unit," the Court reasoned, from an extensive legislative history, that the Legislature did not intend for the State to have the authority to instigate a claim through the administrative process. *Id.* at 94, 691 A.2d at 680.

As detailed in *MFE,* the Legislature's determination not to provide expressly for State initiation of its claims via the administrative process was not inadvertent. *Id.* The basis of the law at issue was the American Bar Association's Model Procurement Code for State and Local Governments ("Model Code"), which attempted to "bring greater coordination, simplicity, and uniformity to State purchasing and procurement processes, to consolidate and integrate the existing diverse

regulation governing notice and filing of an administrative appeal. 345 Md. at 91–92, 691 A.2d at 678–79.

laws and regulations, and to recommend which processes should be in the law and which should be in regulations." *Id.* The second draft of the Model Code, introduced concurrently in 1978 in the Maryland House of Delegates and Senate, allowed for the administrative adjudication of claims both against and by a contractor. *Id.* at 95–96, 691 A.2d at 680–81. Although the House Bill was not acted on, the Senate passed the procurement bill with several amendments. *Id.* at 96, 691 A.2d at 681. One of these amendments was the addition of language that limited access to the administrative dispute resolution process to only those claims made by contractors against the State. *Id.* The amended bill, however, died in a House committee late in the legislative session. *Id.*

During the same 1978 legislative session, a different bill creating a Board of Contract Appeals for the Maryland Department of Transportation was enacted and became law. That law gave the Board jurisdiction "over 'all disputes other than labor disputes arising under a contract with the department, or as a result of a breach of a contract with the department.'" *Id.* at 97, 691 A.2d at 681. As a result, the Department of Transportation contract dispute process clearly contemplated claims initiated by either the State or contractors. *Id.*

The amended bill that failed in the 1978 session was reintroduced in 1979. The Court in *MFE* put great weight on the fact that, during its consideration, the assistant attorney general representing the Department of General Services expressed concern to counsel to the House Constitutional and Administrative Law Committee and the Governor's office, among others, about the lack of an administrative remedy for contract claims brought by the State. *Id.* at 97–98, 691 A.2d at 681–82. The assistant attorney general specifically raised the issue of the potential for duplicitous litigation, and suggested two amendments to the bill that possibly would cure the defect.[9] *Id.* at 99, 691 A.2d at 682. None of the amendments was acted upon. The bill failed to pass again. *Id.*

---

9. These two amendments involved amending the State Procurement Statute "to add the State as 'one of the parties entitled to demand a

The bill was reintroduced once more in the 1980 legislative session with the same language as the failed bills from the 1978 and 1979 sessions. *Id.* This time, however, it passed. The bill also repealed and superseded the Department of Transportation contract dispute process enacted in 1978. *Id.* Prior to the 1980 enactment, the ABA published recommended regulations to accompany its Model Procurement Code that unequivocally provided for administrative resolution of claims against a contractor by the government. *Id.* at 99–100, 691 A.2d at 682–83. Furthermore, the federal government had enacted legislation that "expressly recognized agency claims against a contractor" as amenable under the federal administrative process. *Id.* at 100, 691 A.2d at 683.

The *MFE* Court held that the Maryland Legislature's conscious and consistent refusal to amend its procurement laws provided conclusive proof that the Legislature did not intend to embrace administrative claims initiated by the State against a contractor. *Id.* at 102, 691 A.2d at 684. The Court refused to opine whether such a procurement scheme was the "best approach," but did find that a reading of the statute that foreclosed claims brought by the State was "not one that would make a plain reading of the statute absurd." *Id.*

### B.

Had Heery been able to demonstrate that the *MFE* decision was completely and clearly analogous to the circumstances of the present case, we would be more inclined to intervene in the administrative process here. *See, e.g., Perdue Farms, Inc. v. NLRB,* 108 F.3d 519, 521 (4th Cir.1997) (holding that under the reasoning in *Leedom v. Kyne,* 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958), a court "has jurisdiction ... to review ... decisions ... only 'where the [agency] exceeds its delegated powers or ignores a statutory mandate, and the absence of

negotiation and settlement of disputes' and adding a new [provision] permitting the State, in any appeal to the BCA by a contractor, to assert any counterclaim it may have against the contractor and any third-party claim arising out of the facts." *MFE,* 345 Md. at 99, 691 A.2d at 682.

judicial review would sacrifice or obliterate a right created by [the legislature]' "); *New York Mercantile Exch. v. Commodity Futures Trading Comm'n,* 443 F.Supp. 326, 329 (S.D.N.Y. 1977) (finding that the "Supreme Court has held the doctrine of exhaustion of administrative remedies inapplicable to situations in which an agency's action was entirely outside its statutory jurisdiction"). We, however, are not so persuaded.

It is a long and arduous road that must be traversed in order to arrive at the conclusion that a particular agency's actions are so clearly and unequivocally without authority as to be characterized as "palpably without jurisdiction." It is imperative that a party wishing to circumvent the administrative process demonstrate that it will experience some apparent injury as a result of its involvement in that administrative process. *See West v. Bergland,* 611 F.2d 710, 718 (8th Cir. 1979) (stating that "[c]ourts have traditionally required the individual to make a cogent showing that denial of immediate judicial review will subject him either to 'irreparable injury' or an 'inadequate remedy' "). Although "extraordinary litigation expense, ... unreasonable administrative delay, ... and the immediate destruction or loss of the very substantive right that the individual seeks to protect" have been considered examples of "irreparable injury," the inevitable costs of administrative litigation are not factored into such a finding. *Id.* A party also may be able to demonstrate the requisite "irreparable injury" by demonstrating that the challenged administrative process will provide no adequate remedy or relief. This exception to the administrative exhaustion requirement, however, will be recognized only under the most equitable of circumstances as the exception works against the sound policy favoring completion of available administrative processes and prevention of disruption of those processes.

### C.

Despite Heery's contentions, we can not find at this stage that the County administrative process is "palpably without jurisdiction," based on an analogy to the *MFE* decision. Heery has failed to demonstrate that the County ordi-

nance and its legislative history are so strikingly similar to the State statute at issue in *MFE* as to find that the County agency's consideration of the County's claims is clearly and unequivocally without authority.

Although the County Code and Procurement Regulations contain language and structure similar to the State Procurement Statute in *MFE*, there are several differences that erode our confidence that the two enactments are sufficiently identical as to warrant judicial intervention in the administrative process in the posture of this case as it reaches us. The State statute in *MFE* contained permissive language allowing the contractor the option of submitting a claim to the procurement officer or pursuing another remedy. *See* Md.Code (1985, 2001 Repl.Vol.), § 15–217(a)(2) of the State Finance and Procurement Article (stating that "[a] person who has been awarded a procurement contract *may* submit a contract claim to the procurement officer" (emphasis added)). The County Code in the present case, however, contains a mandatory provision under which a contractor "*must* submit any dispute arising under a contract to the Director." Mont. Co.Code § 11B–35(a) (emphasis added). In addition, the County's Procurement Regulations contain a provision allowing the County to implead a contractor into the administrative process; the State statute in *MFE* did not. Mont. Co. Proc. Regs. § 14.2.2.8. Such a provision partakes of the characteristics of the "cure" suggested by the assistant attorney general in the legislative history in *MFE*, and may indicate that the Montgomery County Council ("County Council") here contemplated that its code and regulations allow for administrative adjudications of claims brought by the County against a contractor.[10] 345 Md. at 99, 691 A.2d at 682.

Furthermore, unlike in *MFE*, Heery has not produced any legislative history that unmistakably demonstrates that the

---

10. It is clear that the County Code authorizes (and perhaps mandates) a contractor initially to bring a claim against the County using the administrative process. Nowhere in the County Code or Procurement Regulations, however, is there express language authorizing or mandating the use of the administrative process for claims brought affirmative-

County Council did not intend for the County Code and Procurement Regulations to provide for administrative adjudication of contract dispute claims brought by the County against a contractor. Although this Court interpreted similar language in the State Procurement Statute to foreclose claims brought by a government entity, we did so only after analyzing a rich and thorough legislative history. *MFE*, 345 Md. at 94–102, 691 A.2d at 680–84. The Court in *MFE* made no indication that the mere text of the statute unquestionably foreclosed such claims, and made a decision on the merits of the jurisdictional question only after detailing a legislative history that left no question as to what the Legislature intended. *Id.* at 94, 691 A.2d at 680. In the present case, however, questions linger.[11]

Heery also has made no showing that its involvement in the County administrative dispute resolution process will result in

---

ly *by* the County. At the circuit court hearing on the County's motion to dismiss, counsel for the County acknowledged that such language was absent from the County Code. He explained that this was because the County "never contemplated the situation" where the County would have to bring a claim against a contractor. Under the County's normal expectation in contract-related disputes, counsel explained further, the County would retain funds when there is a dispute, forcing unpaid contractors to initiate claims under the administrative process against the County. Counsel for the County further indicated that although the County took the position that the administrative process allowed for claims initiated by the County, this case was the first time in the nine years since the process was enacted that the County utilized it to bring a claim against a contractor. Nonetheless, we conclude that enough uncertainty about the agency's jurisdiction exists on this record to prevent us from ruling in Heery's favor at this stage in the dispute. Our disposition, however, is without prejudice to Heery's maintenance of a jurisdictional challenge in the course of the administrative proceedings and any subsequent judicial review. All we decide, at this juncture, is that the County process is not "palpably without jurisdiction" to consider the County's claims.

11. It is also worth noting that in *MFE*, unlike here, the parties availed themselves of the relevant administrative process. In *MFE*, the University utilized its internal review process and MFE appealed that result to the BCA, which dismissed MFE's appeal for untimeliness. A comparison of the relative procedural postures alone distinguishes *MFE* from the present case.

any irreparable injury cognizable by this Court. Likewise, Heery failed to demonstrate that the County administrative process fails to provide an adequate remedy or judicial review of an assertedly erroneous ruling. *See Soley,* 277 Md. at 527, 356 A.2d at 258 (finding that administrative remedies need not be exhausted "where there is no adequate administrative remedy or provision for review of the agency decision"). In fact, the record before us indicates that Heery initiated its action in the circuit court before the County agency had an opportunity to consider and render a decision on whether it had authority over a claim brought by the County. *See New York Mercantile Exchange,* 443 F.Supp. at 331 (stating that even where the agency has grossly exceeded its authority, "it would seem that first resort should be to the [administrative process]"). After the final decision of the CAO, Heery is entitled to judicial review in the circuit court of an adverse administrative decision. Mont. Co.Code § 11B–35(d); Md. Rule 7–201. In the circuit court, Heery's claims of a lack of authority or jurisdiction may be considered de novo. Any adverse decision there may be appealed further to the Court of Special Appeals.

Our task in the present case is to determine whether the County administrative process is clearly and unequivocally without authority. Based on this record, we are unable to reach this conclusion. Heery's desire to avoid the uncertainty of the administrative process must yield, for the moment, to the deep-rooted principle that ordinarily the administrative process must be exhausted before a party may expect judicial review.

JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.