**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 16-1322**

BALFOUR BEATTY INFRASTRUCTURE, INC.,

Plaintiff - Appellant,

v.

MAYOR AND CITY COUNCIL OF BALTIMORE,

Defendant - Appellee.

Appeal from the United States District Court for the District of Maryland, at Baltimore. Richard D. Bennett, District Judge.  (1:15-cv-01745-RDB)

Argued:  January 25, 2017                          Decided:  April 25, 2017

Before GREGORY, Chief Judge, and THACKER and HARRIS, Circuit Judges.

Affirmed by published opinion.  Judge Harris wrote the opinion, in which Chief Judge Gregory and Judge Thacker joined.

**ARGUED:** Gregory S. Martin, MARTIN HILD, P.A., Maitland, Florida, for Appellant. Patrick Donald Sheridan, BALTIMORE CITY DEPARTMENT OF LAW, Baltimore, Maryland, for Appellee.  **ON BRIEF:** Lucas F. Webster, HUDDLES, JONES, SORTEBERG & DACHILLE, P.C., Columbia, Maryland, for Appellant.  Thomas P.G. Webb, Assistant Solicitor, BALTIMORE CITY DEPARTMENT OF LAW, Baltimore, Maryland, for Appellee.

PAMELA HARRIS, Circuit Judge:

Balfour Beatty Infrastructure, Inc. ("BBII") sued the City of Baltimore for breach of contract, alleging that the City unlawfully assessed liquidated damages against the company for failure to complete a construction project on time. The issue in this appeal is whether BBII must exhaust its administrative remedies against the City before suing in federal court. We agree with the district court that BBII is not excused from the normal requirement of administrative exhaustion under Maryland law, and therefore affirm the district court's dismissal for lack of subject matter jurisdiction.

## I.

## A.

This case involves two public works contracts entered into by the City of Baltimore and BBII,[1] under which BBII agreed to build certain parts of a wastewater treatment system aimed at reducing pollution in the Chesapeake Bay. The contracts stipulate that "[t]ime is of the essence," J.A. 72, 75, and BBII committed to completing its work by February 28, 2015. If it did not, then the City would have the right to assess liquidated damages for each day past the deadline, by withholding a portion of its monthly payments to BBII.

---

[1] The City originally contracted with Fru-Con Construction Corporation, which assigned its contract to Fru-Con Construction, LLC, which in turn merged into Balfour Beatty Infrastructure, Inc. For ease of reference, we refer to all three as BBII.

The contracts also incorporate provisions for the resolution of claims and disputes, which require BBII to seek administrative review of any dispute related to its contracts with the City before suing in court. Those provisions are grounded in the City's Charter, which authorizes the City to establish an administrative process for the resolution of disputes arising from City construction contracts. *See* Charter of Baltimore City, art. II, § 4(A)(g) (2002 revision). Pursuant to that authority, the City has provided for an administrative dispute resolution process that governs all claims by contractors related to public works projects, set forth in the City's "Department of Public Works Specifications – Materials, Highways, Bridges, Utilities and Incidental Structures 2006," generally known as the "Green Book."

Neither party disputes that the Green Book dispute resolution process is incorporated into the contracts at issue here. Under that dispute resolution process, a contractor is required to give "prompt notice" of any claim or dispute to the Department of Public Works engineer assigned to its project. J.A. 99. That engineer, along with the project's inspector and division head, is charged with initial review of the claim, with the contractor responsible for providing any additional information requested by the City. If the contractor chooses to appeal, then review proceeds up through a Department of Public Works bureau head and, if the contractor remains dissatisfied, to ultimate review by the Director of Public Works, who acts as a hearing officer during an on-the-record administrative hearing and issues a final decision. At that point – and only at that point – the contractor may bring its claim to a "court of competent jurisdiction." J.A. 101.

3

**B.**

During the course of its work on the wastewater treatment system, BBII ran into what it calls a "series of design errors, omissions and inconsistencies" on the part of the City that made it impossible to finish the project by the February 28, 2015 deadline. J.A. 11. On March 2, 2015, two days after the deadline had expired and before final action on several BBII extension requests, the City informed BBII that it would exercise its contractual right to assess liquidated damages at the rate of $20,000 per day on each contract, until the projects were completed. The City then began to deduct $40,000 per day from its monthly payments to BBII.

BBII bypassed the administrative process incorporated into its contracts with the City and went directly to federal court to file this suit.[2] Naming as defendants the Mayor and City Council of Baltimore ("the City"), BBII alleged that the City had materially breached its contracts with BBII by declaring BBII in default and assessing liquidated damages without first pursuing its own claims through the administrative dispute resolution process and affording BBII an administrative hearing. According to BBII, the City's actions amounted to an illegal and ultra vires "abandonment" of the Green Book administrative process, relieving BBII of any obligation to use that process itself. J.A. 366.

---

[2] This is not the first time that BBII has sued the City for breach of contract without first exhausting its administrative remedies. As the district court noted, it has once before dismissed an action by BBII arising out of a City contract for failure to exhaust the administrative procedures set out in the City's standard public works contract. *See Fru-Con Constr., LLC v. Mayor of Baltimore*, No. RDB-14-434, 2014 WL 6675625, at *6 (D. Md. Nov. 24, 2014).

4

The district court disagreed, and held that BBII was required to exhaust the administrative remedies provided for by its City contracts. The court began by describing Maryland law's "strong preference for administrative exhaustion," J.A. 362 – a preference, it noted, that is consistent with federal law, as well. Under Maryland law, the court explained, it is well established that "[w]here an administrative agency has primary or exclusive jurisdiction over a controversy, the parties to the controversy must ordinarily await a final administrative decision before resorting to the courts for resolution of the controversy." J.A. 363 (quoting *Heery Int'l, Inc. v. Montgomery Cty., Md.*, 862 A.2d 976, 981 (Md. 2004)). And that general principle, the court determined, governs this case, where the Green Book provisions incorporated into BBII's contracts "mandate[] that the prescribed administrative procedures are the exclusive procedures for the prosecution and resolution of all claims and disputes." J.A. 365 (internal quotation marks omitted).

The district court recognized that the exhaustion requirement applies only where the agency designated to hear a dispute actually has "jurisdiction over [the] controversy," *Heery*, 862 A.2d at 981 – or, correspondingly, that there is an exception to the exhaustion requirement when the "reviewing agency is 'palpably without jurisdiction'" to adjudicate a party's claim. J.A. 365 (quoting *Heery*, 862 A.2d at 989). That exception, the district court explained, also "requires a complaining party to plead an 'irreparable injury' if it is forced to navigate the prescribed administrative process." J.A. 365–66 (quoting *Heery*, 862 A.2d at 989). Because BBII could show neither that the City officials designated to review its contract dispute are "palpably without jurisdiction" to do so, nor that it would

5

be irreparably damaged if required to postpone litigation until completion of the administrative process, the court concluded, the exception does not apply.

Whether the City acted unlawfully by assessing liquidated damages without first engaging in the Green Book administrative process, as alleged by BBII, is a different question, the court explained – and precisely the kind of regulatory interpretation issue that "should be decided administratively before proceeding to judicial review" under Maryland law. J.A. 367 (citing *Heery*, 862 A.2d at 986). Even assuming, as BBII argued, that the City acted without authority in taking liquidated damages absent administrative review, that would not excuse BBII from exhausting its administrative remedies: Maryland courts have not adopted an exception to exhaustion for cases in which "the act of an administrative agency is alleged to be ultra vires or illegal." J.A. 368 (quoting *Soley v. State Comm'n on Human Relations*, 356 A.2d 254, 258 (Md. 1976)).

Finally, the district court rejected BBII's claim that it need not exhaust its administrative remedies because the City employees who would review its claims are biased against BBII and naturally predisposed to favor the City's own positions. If that were so, the court reasoned, then an administrative agency involved in a dispute could never require exhaustion of administrative remedies – undermining a "fundamental purpose" of exhaustion, the "protection of an administrative agency's authority to interpret its own regulations, statutes, and other guidelines." J.A. 370 (quoting *Fru-Con Constr., LLC v. Mayor of Baltimore*, No. RDB-14-434, 2014 WL 6675625, at *6 (D. Md. Nov. 24, 2014)).

Because BBII failed to exhaust its administrative remedies, the district court dismissed its action against the City for lack of subject matter jurisdiction. This timely appeal followed.

## II.

This Court reviews de novo a district court's dismissal for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). *Pitt Cty. v. Hotels.com, L.P.*, 553 F.3d 308, 311 (4th Cir. 2009). A Rule 12(b)(1) motion to dismiss should be granted "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999) (internal quotation marks omitted).

We agree with the district court that on the undisputed record facts and as a matter of law, BBII was required to exhaust its contractual administrative remedies before filing this action in federal court. BBII's principal argument to the contrary is that it was excused from administrative exhaustion under Maryland law because the "City acted 'palpably without jurisdiction' in taking liquidated damages against BBII without first following the contractual dispute resolution procedure." Br. of Appellant at 2. But that position reflects a fundamental misunderstanding of the "palpably without jurisdiction" exception to the exhaustion requirement under Maryland law.

As the district court explained, although Maryland law generally requires that administrative remedies be exhausted before proceeding to court, it admits of an exception when the administrative tribunal charged with considering a party's claim is

7

"palpably without jurisdiction" to hear and resolve that claim or class of claims. *See Heery*, 862 A.2d at 985 (administrative agency is "palpably without jurisdiction" for purposes of exhaustion exception where it "lacks a clear authority to adjudicate a given class of claims" designated for exhaustion); *see also, e.g.*, *State v. Md. State Bd. of Contract Appeals*, 773 A.2d 504, 511 (Md. 2001) ("palpably without jurisdiction" exception applies where dispute is pending before adjudicatory administrative agency that does not have jurisdiction to review the matter). It is easy to understand why such an exception might exist: There is little, if anything, to be gained by insisting that a party take its dispute to a tribunal that lacks the authority to rule on it, or to provide a remedy. *See United Ins. Co. of Am. v. Md. Ins. Admin.*, 144 A.3d 1230, 1249 (Md. 2016) (recognizing exhaustion exception "[w]here the administrative agency cannot provide to any substantial degree a remedy"). Indeed, the Supreme Court has observed that exhaustion may be excused as futile when the agency charged with administrative review is not empowered to adjudicate the issue presented or to grant effective relief. *See McCarthy v. Madigan*, 503 U.S. 140, 147–48 (1992), *superseded by statute on other grounds*, 42 U.S.C. § 1997e(a).

But that exception has no application here. Nobody disputes that BBII's contracts with the City are public works contracts governed by the Department of Public Works Green Book and its dispute resolution procedures. And as the Green Book makes clear, the Department of Public Works officials charged with administrative review of contractor claims arising from public works contracts have the authority to hear and resolve those claims. *See, e.g.*, J.A. 99–100 (project engineer has discretion to grant

8

extensions on public works projects); J.A. 100 (bureau head has "all of the authority and powers to settle disputes" arising from public works contracts); J.A. 101 (Director of Public Works shall "resolve any and all claims and/or disputes" under public works contracts). That is all that is required to take this case outside the "palpably without jurisdiction" exception to the normal expectation of administrative exhaustion. *See State Bd. of Contract Appeals*, 773 A.2d at 511; *Heery*, 862 A.2d at 985–86.

BBII does not even allege that the relevant agency officials lack the authority to review its breach of contract claims against the City. Instead, it argues that the City lacked authority to deduct liquidated damages from its payments to BBII without first engaging in the Green Book dispute resolution process. But that, as the district court recognized, is an entirely different issue, going to the merits of the underlying dispute between BBII and the City rather than to the "palpably without jurisdiction" exception. BBII reads the Green Book regulations incorporated into its contracts as requiring administrative exhaustion by the City, as well as by contractors; the City disagrees, and construes the contractual dispute resolution process as binding on contractors but not on the City. Under Maryland law, that is precisely the kind of interpretive question that is to be "determined by a final administrative decision and to be judicially reviewed only after the administrative remedy has been exhausted." *Heery*, 862 A.2d at 986 (internal quotation marks omitted). Indeed, Maryland's highest court held just that in *Heery*, on facts remarkably similar to those before us now, finding that whether Montgomery County's administrative dispute resolution process governed claims by the County as

9

well as by contractors was a matter to be exhausted before the relevant county agency. *Id.*

It may well be, as the district court suggested, that the City has the better of the interpretive argument here, and that the Green Book does not require that the City follow its administrative review procedures prior to taking liquidated damages. But we need not reach that question, because as the district court also recognized, the outcome does not matter for purposes of exhaustion. Even assuming that the City is wrong, and that it impermissibly assessed liquidated damages without engaging in the contractual dispute resolution process, that would not relieve BBII from its own obligation to exhaust administrative remedies. The Maryland courts have made clear that even when an interpretive dispute is "phrased in terms of the agency's 'authority,' 'power' or 'jurisdiction' to take a certain type of action in a specific case," it must be submitted first to the agency for decision. *Id.* at 982 (quoting *Md. Comm'n on Human Relations v. Mass Transit Admin.*, 449 A.2d 385, 389 (Md. 1982)); *see Soley*, 356 A.2d at 258 (requiring exhaustion even "where the act of an administrative agency is alleged to be ultra vires or illegal"). Under Maryland law, that is, "[a] party's argument that an agency will be exceeding its authority if it ultimately . . . decides the case contrary to that party's position[] does not excuse the failure" to exhaust administrative remedies. *Heery*, 862 A.2d at 982–83 (quoting *Mass Transit Admin.*, 449 A.2d at 389).

Nor need we address the district court's conclusion that BBII would not suffer "irreparable injury" if required to exhaust administrative remedies, given that an eventual judgment in BBII's favor would compensate it adequately for any losses. As the district

10

court explained, *Heery* suggests that the "palpably without jurisdiction" exception requires not only that the designated administrative tribunal clearly lack jurisdiction over the parties' dispute, but also that involvement in the administrative process would cause "irreparable injury" to the party invoking the exception. *See* 862 A.2d at 989. Because BBII has not shown or even alleged that the Department of Public Works lacks jurisdiction over its breach of contract claim, we have no occasion to further explore this other aspect of Maryland's exhaustion exception or its application to this case.

Finally, like the district court, we find no merit to BBII's argument that it is excused from exhaustion because the City has predetermined the outcome of the administrative proceeding. Again, we need not decide whether and under precisely what circumstances Maryland law provides for a "bias" exception to the general requirement of administrative exhaustion. Here, BBII has failed to allege any facts showing "bias" on the part of the City that would render inadequate BBII's administrative remedies. BBII points to a letter from the Department of Public Works expressing concern about the status and timeliness of BBII's work, but that does not bear on whether the City has predetermined the outcome of BBII's legal claim regarding the City's obligations under the Green Book's administrative review process. And as the district court observed, if BBII's theory that City officials inevitably will be "predisposed" to favor the City's position was enough to excuse exhaustion, the "bias" exception would swallow the rule: Under no circumstances could a government agency require that its own officials or tribunals be given the first opportunity to address a claim against it. BBII's conclusory

11

allegation of "bias," without more, does not entitle it to bypass the administrative dispute resolution process for which it contracted.

## III.

For the foregoing reasons, the judgment of the district court is affirmed.

*AFFIRMED*